**SKF USA INC. and SKF GmbH, Plaintiffs,**

**and**

**FAG Kugelfischer Georg Schafer AG and FAG Bearings Corporation, Plaintiffs–Appellants,**

**v.**

**UNITED STATES, Defendant,**

**and**

**The Torrington Company, Defendant–Appellee,**

**and**

**NTN Bearing Corporation of America And NTN Kugellagerfabrik (Deutschland) GmbH, Defendants,**

**and**

**SNR Roulements, Defendant.**

No. 00–1305.

United States Court of Appeals, Federal Circuit.

May 25, 2001.

Mark E. Pardo, Grunfeld, Desiderio, Lebowitz & Silverman LLP, of New York, NY, argued for plaintiffs-appellants. With him on the brief were Max F. Schutzman,

Andrew B. Schroth, and Adam M. Dambrov. Of counsel was Jeffrey S. Grimson.

Velta A. Melnbrencis, Assistant Director, Commercial Litigation Branch, Department of Justice, of Washington, DC, for defendant United States.

Donald J. Unger, Barnes, Richardson & Colburn, of Chicago, IL, for defendants NTN Bearing Corporation of America, Et Al.

Wesley K. Caine, Stewart and Stewart, of Washington, DC, argued for defendant-appellee, The Torrington Company. With him on the brief was Geert De Prest. Of counsel was Lane S. Hurewitz.

Before PLAGER, Senior Circuit Judge, BRYSON and DYK, Circuit Judges.

DYK, Circuit Judge.

This case concerns the obligation of a court to remand a case to an administrative agency upon the agency's change in policy or statutory interpretation. We hold that the Court of International Trade erred in declining to remand the case to the Department of Commerce, and accordingly we reverse that court's decision in *SKF USA Inc. v. United States,* 77 F.Supp.2d 1335 (Ct. Int'l Trade 1999).

I

Appellants FAG Kugelfishcher Georg Schafer AG and FAG Bearings Corporation (collectively, "FAG") are, respectively, a manufacturer and importer of antifriction bearings from Germany. This case concerns an antidumping duty order on antifriction bearings (other than tapered roller bearings) and parts thereof. Before the Court of International Trade, this case

involved issues that are no longer in dispute and other parties who are no longer involved in the remaining issue. We limit our discussion to the issue that remains before us.

In 1994, following the submission of review requests by interested parties, the Department of Commerce ("Commerce") initiated an antidumping administrative review covering the period from May 1, 1993, through April 30, 1994. *See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom; Initiation of Antidumping Duty Administrative Reviews and Notice of Request for Revocation of an Order,* 59 Fed.Reg. 32,180 (June 22, 1994).

During the course of this review, FAG submitted information concerning the cost of production of the subject merchandise. This appeal involves the proper disposition of one component of FAG's costs: a loss incurred by FAG on the sale of its Korean subsidiary, and whether that loss should be included in FAG's general and administrative ("G & A") expense calculation.

To place the G & A expense calculation in context, we outline briefly its place in the antidumping statutory scheme. Under the law that applied to this proceeding, Commerce was required to impose an antidumping duty on imported merchandise that was being sold, or was likely to be sold, in the United States at less than its fair value to the detriment of a domestic industry. *See* 19 U.S.C. § 1673(1)-(2) (1988).[1] The amount of the duty equaled "the amount by which the foreign market value exceeds the United States price for

1. Because the administrative review at issue here was initiated before January 1, 1995, the applicable law is the law existing before the statutory changes made by the Uruguay Round Agreements Act, Pub.L. No. 103–465, 108 Stat. 4809 (1994). *See Torrington Co. v. United States,* 68 F.3d 1347, 1352 (Fed.Cir. 1995).

the merchandise." 19 U.S.C. § 1673. Foreign market value was the price of the merchandise in the producer's home market or its export price to countries other than the United States. 19 U.S.C. § 1677b(a)(1); *IPSCO, Inc. v. United States*, 965 F.2d 1056, 1059 (Fed.Cir.1992). However, under specified circumstances when Commerce had reasonable grounds to believe that home or export market sales prices were less than the cost of production, the statute mandated calculation of "constructed value" in lieu of foreign market value. 19 U.S.C. § 1677b(b); *IPSCO*, 965 F.2d at 1059. G & A expenses were one component of constructed value and were based upon "an amount for general expenses ... equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise under consideration which are made by producers in the country of exportation." 19 U.S.C. § 1677b(e)(1)(B). The result of this statutory scheme was that when the loss incurred by FAG on its Korean sale was included in G & A expenses, constructed value was increased, thereby increasing the "minimum price level at which imported goods may be sold without incurring antidumping duties." *Thai Pineapple Public Co. v. United States*, 187 F.3d 1362, 1365 (Fed.Cir.1999), *cert. denied*, 529 U.S. 1097, 120 S.Ct. 1830, 146 L.Ed.2d 775 (2000).

During the course of Commerce's administrative review, FAG argued that the loss it incurred on the sale of its Korean subsidiary should not be included in its G & A expense calculation. FAG argued that because the Korean joint venture produced bearings exclusively in Korea, the loss from the Korean joint venture should not have been included in the G & A calculation for the subject merchandise (that is, bearings produced in Germany). It is argued that because Germany was the "country of exportation" for purposes of 19

U.S.C. § 1677b(e)(1)(B), losses associated with the Korean facility should have been excluded from G & A.

Commerce concluded that the loss from the sale of the Korean facility should be included in FAG's G & A expenses. *See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Singapore, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews*, 61 Fed.Reg. 66,472, 66,497 (Dec. 17, 1996) ("Final Results"). It explained that "[t]his cost relates to the overall operation of the company. Therefore, it is most appropriately characterized as a G & A expense...." *Id.* at 66,497.

On appeal to the Court of International Trade, FAG again argued that the loss related to the Korean sale should not be included in the G & A expense calculation. Commerce reversed course. Rather than defending its Final Results, it stated in its brief to the Court of International Trade that: "Upon review of FAG's argument, Commerce agrees that this loss should not be included in FAG's G & A ratio because the operations of the joint venture were unrelated to the production of the subject merchandise. Consequently, this case should be remanded to Commerce to remove the costs related to the sale of the Korean facility from FAG's G & A calculation." Brief for Defendant United States of America, at 35–36.

The Court of International Trade rejected Commerce's request for a remand and affirmed Commerce's decision in its Final Results to include the loss from the Korean sale in the G & A expense calculation. The court found that "Commerce's decision to include the loss because it relates to the overall operation of the company

results from a reasonable construction" of the relevant statute, and it therefore affirmed Commerce's determination. *SKF USA Inc. v. United States,* 77 F.Supp.2d 1335, 1346 (Ct. Int'l Trade 1999). Regarding Commerce's new position and request for remand, the court held that it could not "rely on the post-hoc position advanced by Commerce in its brief as the basis to uphold or overturn its administrative action. . . ." *Id.* at 1345 n. 3. The court cited *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 169, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962), for the proposition that "an agency's discretionary order [must] be upheld, if at all, on the same basis articulated in the order by the agency itself." *SKF USA Inc.,* 77 F.Supp.2d at 1345 n. 3 (brackets in original). FAG now appeals the Court of International Trade's decision to this court.

## II

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(5). We discuss in section III below the standard of review appropriate to reviewing the Court of International Trade's denial of an agency's request for remand.

In this case, we do not reach the merits of Commerce's determinations. Nevertheless, because we are concerned with Commerce's authority to change its policy, it is worthwhile to describe the deferential standard under which we review Commerce's antidumping determinations. When reviewing those determinations, we apply anew the same standard of review applied by the Court of International Trade in reviewing the administrative record: we uphold Commerce's determinations unless they are "unsupported by substantial evidence in the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. Unit-*ed States, 216 F.3d 1027, 1031 (Fed.Cir. 2000). In reviewing an agency's construction of a statute it administers, this court addresses two questions, as required by the Supreme Court's decision in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We first determine "whether Congress has directly spoken to the precise question at issue." *Id.* at 842, 104 S.Ct. 2778. If so, this court and the agency "must give effect to the unambiguously expressed intent of Congress." *Id.* at 843, 104 S.Ct. 2778. If however, Congress has not spoken directly on the issue, this court addresses the second question: whether the agency responsible for filling a gap in the statute has rendered an interpretation that is "based on a permissible construction of the statute." *Id.; Micron Tech., Inc. v. United States,* 243 F.3d 1301, 1308 (Fed.Cir.2001).

In antidumping cases, this court has acknowledged "Commerce's special expertise," and it has "accord[ed] substantial deference to its construction of pertinent statutes." *Micron Tech., Inc. v. United States,* 117 F.3d 1386, 1394 (Fed.Cir.1997). We have also noted that "factual determinations supporting anti-dumping margins are best left to the agency's expertise." *F.lli De Cecco di Filippo Fara S. Martino S.p.A.,* 216 F.3d at 1032. The decision at issue in this case—whether to include the loss from the sale of the Korean facility in G & A expenses—is not compelled or forbidden by the governing statute, and Commerce is therefore entitled to substantial deference in its decision.

## III

The following discussion will help to place the issue presented here in context. It appears that when an agency action is reviewed by the courts, in general

the agency may take one of five positions, though it is possible that there may be remand situations that do not fall neatly into this taxonomy. First, it may choose to defend the agency's decision on the grounds previously articulated by the agency. Second, it may seek to defend the agency's decision on grounds *not* previously articulated by the agency. Third, the agency may seek a remand to reconsider its decision because of intervening events outside of the agency's control. Fourth, even in the absence of intervening events, the agency may request a remand, without confessing error, to reconsider its previous position. Finally, as in the present situation, the agency may request a remand because it believes that its original decision was incorrect on the merits and it wishes to change the result. A comprehensive discussion of many of these issues is set forth in *Lawrence v. Chater*, 516 U.S. 163, 116 S.Ct. 604, 133 L.Ed.2d 545 (1996) (per curiam). We briefly discuss the first four situations before turning to the case at hand.

■ In the first situation, in which the agency defends its decision on the grounds articulated by the agency, the obligation of the court is clear. We review the agency's decision under the Administrative Procedure Act and any other applicable law. Based on our decision on the merits, we affirm or reverse, with or without a remand.

■ In the second situation, in which the agency seeks to defend its decision on grounds not previously articulated by the agency, the obligation of the reviewing court is also well-settled. In this classic *Chenery* situation, *see Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), we generally decline to consider the agency's new justification for the agency action, and we again affirm or reverse, with or

without a remand, although there are exceptions to the *Chenery* rule. *See Koyo Seiko Co. v. United States*, 95 F.3d 1094, 1099–1102 (Fed.Cir.1996). The *Burlington Truck Lines* decision, which the Court of International Trade cited as a basis for rejecting Commerce's changed position here, is an example of the *Chenery* situation. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 165–169, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962). In *Burlington Truck Lines*, the Interstate Commerce Commission had failed to make any findings regarding its choice between two different remedies, and it had failed to articulate "any rational connection between the facts found and the choice made." *Id.* at 168, 83 S.Ct. 239. Although counsel sought to justify the agency's choice by arguing that the alternative remedy urged by the opposing party on appeal would have been ineffective, the Supreme Court rejected this argument because "courts may not accept appellate counsel's *post hoc* rationalizations for agency action." *Id.* (emphasis in original). The Supreme Court ordered that the Commission's action be vacated and ordered a remand to the Commission.

■ Third, the agency may seek a remand because of intervening events outside of the agency's control, for example, a new legal decision or the passage of new legislation. *See Lawrence*, 516 U.S. at 169, 116 S.Ct. 604 (discussing remands to lower courts based on intervening factors); *Nat'l Fuel Gas Supply Corp. v. Fed. Energy Regulatory Comm'n*, 899 F.2d 1244, 1249 (D.C.Cir.1990) (granting Commission's request for remand following new legal decision). A remand is generally required if the intervening event may affect the validity of the agency action. *See Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C.Cir.1993) (noting "the tradition of allowing agencies to reconsider their actions where events

pending appeal draw their decision in question").

▮ Fourth, even if there are no intervening events, the agency may request a remand (without confessing error) in order to reconsider its previous position. It might argue, for example, that it wished to consider further the governing statute, or the procedures that were followed. It might simply state that it had doubts about the correctness of its decision or that decision's relationship to the agency's other policies. Here, the reviewing court has discretion over whether to remand. *See Southwestern Bell Tel. Co. v. Fed. Communications Comm'n,* 10 F.3d 892, 896 (D.C.Cir.1993) (noting that the court had previously allowed a remand to the FCC where the FCC sought voluntary remand "to give further consideration to the matters addressed in the [FCC's] orders"), *cert. denied,* 512 U.S. 1204, 114 S.Ct. 2673, 129 L.Ed.2d 809 (1994); *Wilkett v. Interstate Commerce Comm'n,* 710 F.2d 861, 863 (D.C.Cir.1983) (noting that the court had granted the Commission's motion for remand for purposes of reconsideration); *see also Anchor Line Ltd. v. Fed. Maritime Comm'n,* 299 F.2d 124, 125 (D.C.Cir.) (noting that "when an agency seeks to reconsider its action, it should move the court to remand or to hold the case in abeyance pending reconsideration by the agency"), *cert. denied,* 370 U.S. 922, 82 S.Ct. 1563, 8 L.Ed.2d 503 (1962). A remand may be refused if the agency's request is frivolous or in bad faith. For example, in *Lutheran Church–Missouri Synod v. Fed. Communications Comm'n,* 141 F.3d 344, 349 (D.C.Cir.1998), the Court of Appeals for the District of Columbia Circuit refused the FCC's "novel, last second motion to remand," noting that the remand request was not based on a confession of error and was instead based on a prospective policy statement which would not bind the FCC. *See id.* The court added that "the Commission has on occasion employed some rather unusual legal tactics when it wished to avoid judicial review, but this ploy may well take the prize." *Id.* Nevertheless, if the agency's concern is substantial and legitimate, a remand is usually appropriate.

▮ Fifth and finally, the agency may request a remand because it believes that its original decision is incorrect on the merits and wishes to change the result. That is the present situation. Remand to an agency is generally appropriate to correct simple errors, such as clerical errors, transcription errors, or erroneous calculations. *See Borlem S.A.—Empreedimentos Industriais v. United States,* 913 F.2d 933, 935 (Fed.Cir.1990). The more complex question, however, involves a voluntary remand request associated with a change in agency policy or interpretation. If there is a step one *Chevron* issue—that is, an issue as to whether the agency is either compelled or forbidden by the governing statute to reach a different result—a reviewing court again has considerable discretion. It may decide the statutory issue, or it may order a remand. For example, in *Steele v. FCC,* No. 84–1176 (D.C.Cir. Oct. 31, 1985) (en banc), as described in *Lamprecht v. FCC,* 958 F.2d 382, 385 (D.C.Cir. 1992), the Court of Appeals for the District of Columbia Circuit granted the FCC's motion to remand when the FCC admitted that its decision was contrary to the Communications Act and the Constitution. Although a court need not necessarily grant such a remand request, remand may conserve judicial resources, or the agency's views on the statutory question, though not dispositive, may be useful to the reviewing court. *See Lawrence,* 516 U.S. at 167, 116 S.Ct. 604.

▮ Where there is no step one *Chevron* issue, we believe a remand to the

agency is required, absent the most unusual circumstances verging on bad faith. Under *Chevron,* agencies are entitled to formulate policy and make rules "to fill any gap left, implicitly or explicitly, by Congress." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778 (quoting *Morton v. Ruiz,* 415 U.S. 199, 231, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974)). Furthermore, an agency must be allowed to assess "the wisdom of its policy on a continuing basis." *Id.* at 864, 104 S.Ct. 2778. Under the *Chevron* regime, agency discretion to reconsider policies does not end once the agency action is appealed. *See Auer v. Robbins,* 519 U.S. 452, 462–63, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (deferring to agency's interpretation of its own regulation advanced in litigation). We have noted that "[a]ny assumption that Congress intended to freeze an administrative interpretation of a statute, which was unknown to Congress, would be entirely contrary to the concept of *Chevron*—which assumes and approves the ability of administrative agencies to change their interpretation." *Micron Tech., Inc.,* 243 F.3d at 1312.

For example, in *Lawrence v. Chater,* 516 U.S. 163, 116 S.Ct. 604, 133 L.Ed.2d 545 (1996) (per curiam), the Supreme Court addressed a situation in which the Social Security Administration changed its interpretation of the Social Security Act during the course of litigation. *Id.* at 165, 116 S.Ct. 604. The Supreme Court determined that under the circumstances, a GVR (grant certiorari, vacate the judgment below, and remand the case) order was appropriate. *Id.* at 166, 116 S.Ct. 604. The Court cited "the principle that a new interpretation of a statute adopted by the agency charged with implementing it may be entitled to deference in the context of litigation to which the Government is a party," *id.* at 172, 116 S.Ct. 604, and it specifically stated that a GVR order was appropriate "in light of a new agency interpretation of a statute that is entitled to deference under the rule of *Chevron* . . . ." *Id.* at 171, 116 S.Ct. 604.

■ Here, although the decision of the Court of International Trade is not entirely clear, we read it as holding that the statutory definition of general expenses is ambiguous, and that Commerce has discretion in whether to include the loss from the sale of the Korean facility in G & A expenses. The court stated that Commerce's decision to include the loss in G & A expenses was a reasonable construction of 19 U.S.C. § 1677b(e)(1)(B), which defines general expenses. *See SKF USA Inc.,* 77 F.Supp.2d at 1346. The parties at oral argument agreed that Commerce had discretion in how to classify the loss, and we also find nothing in the statutory scheme which mandates either including or excluding the loss from G & A expenses. Furthermore, there is no indication whatsoever that Commerce here is acting in bad faith. This is therefore a situation where remand is required.

### CONCLUSION

We find that the question of whether to include the loss from the sale of the Korean facility in G & A expenses falls within the range of choices left to Commerce, and we therefore hold that the Court of International Trade erred in rejecting a motion to remand to Commerce. The judgment of the Court of International Trade is accordingly reversed, and we remand with instructions to remand this case in turn to Commerce to reconsider its calculation of G & A expenses.

REVERSED AND REMANDED.

COSTS

No costs.