**Slip Op. 09-105**

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **UNION STEEL**, | |
| Plaintiff, | |
| v. | |
| **UNITED STATES**, | **Before:  Timothy C. Stanceu, Judge** |
| Defendant, | **Court No. 08-00101** |
| and | |
| **UNITED STATES STEEL CORPORATION and NUCOR CORPORATION**, | |
| Defendant-Intervenors. | |

## OPINION AND ORDER

[Affirming in part a final determination of the U.S. Department of Commerce and granting defendant's request for a partial voluntary remand]

Dated: September 28, 2009

*Troutman Sanders LLP* (*Donald B. Cameron*, *Brady W. Mills*, *Jeffrey S. Grimson*, *Julie C. Mendoza*, *Rudi W. Planert*, and *Mary S. Hodgins*) for plaintiff.

*Tony West,* Assistant Attorney General, *Jeanne E. Davidson,* Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Claudia Burke*); *Jonathan Zielinski* and *Daniel J. Calhoun*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

*Skadden Arps Slate Meagher & Flom, LLP* (*Ellen J Schneider*, *Jeffrey D. Gerrish*, *Jared R. Wessel*, *John J. Mangan*, *Robert E. Lighthizer*, and *Luke A. Meisner*) for defendant-intervenor United States Steel Corporation.

     *Wiley Rein, LLP* (*Timothy C. Brightbill*, *Alan H. Price*, and *Robert E. DeFrancesco, III*) for defendant-intervenor Nucor Corporation.

     Stanceu, Judge: Plaintiff Union Steel ("Union") contests the final determination ("Final Results") issued by the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department"), in a periodic administrative review of an antidumping duty order on imports of certain corrosion-resistant carbon steel flat products (the "subject merchandise") from the Republic of Korea ("Korea"). *See Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea: Notice of Final Results of the Thirteenth Admin. Review*, 73 Fed. Reg. 14,220 (Mar. 17, 2008) ("*Final Results*"). Union, a producer and exporter of subject merchandise and a respondent in the review, brings two claims. Union challenges Commerce's "model match" methodology, by which Commerce compared Union's U.S. sales of painted corrosion-resistant carbon steel flat products to Union's home market sales, which included not only painted products but also "laminated" products, *i.e.*, products that are coated with a plastic film rather than paint. Second, plaintiff challenges Commerce's construction of 19 U.S.C. § 1677(35) (2006), according to which Commerce concluded that it was permissible to apply "zeroing," *i.e.*, the deeming of the sales a respondent makes in the United States at prices above normal value to have individual dumping margins of zero rather than negative margins.

     Without confessing error, defendant requests that the court order a partial voluntary remand to allow Commerce to reconsider its denial, made during the review, of plaintiff's request to revise the model match methodology. Plaintiff responds that a remand on this issue is required but submits that the court, in issuing a remand order, should consider plaintiff's substantive arguments, make certain findings with respect to Commerce's model match

determination, and issue specific instructions governing the scope and substance of the remand redetermination. Defendant-intervenors Nucor Corporation ("Nucor") and United States Steel Corporation ("U.S. Steel") argue that the Department's model match methodology is supported by substantial evidence and otherwise consistent with law and, in the alternative, oppose the specific remand instructions sought by Union. For the reasons discussed herein, the court grants defendant's request for voluntary remand and declines to issue a remand order in the form that plaintiff advocates.

Based on applicable precedent, the court affirms the Department's use of zeroing in the Final Results. Accordingly, the court denies relief on plaintiff's second claim.

## I. BACKGROUND

In September 2006, Commerce initiated the thirteenth administrative review of an antidumping duty order on certain corrosion-resistant carbon steel flat products from Korea for the period of August 1, 2005, through July 31, 2006 (the "period of review"). *Initiation of Antidumping and Countervailing Duty Admin. Reviews*, 71 Fed. Reg. 57,465 (Sept. 29, 2006). In conducting the review, Commerce sent Union and other respondents a questionnaire detailing twelve model-match criteria, the first of which was termed "TYPE." *Letter from U.S. Dep't of Commerce to Union Steel Manufacturing Co., Ltd.* (Sept. 13, 2006) (Admin. R. Doc. No. 7); *Letter from U.S. Dep't of Commerce to Dongbu Steel Co., Ltd.*, App. IV at 1 (Sept. 13, 2006) (Admin. R. Doc. No. 9); Br. in Supp. of the Mot. of Pl. Union Steel for J. upon the Agency R. 2-3 ("Pl.'s Br."). The questionnaire listed four possible types of corrosion-resistant carbon steel flat products: (1) "Clad (metals bonded by the hot-rolling process), less than 3/16" in thickness"; (2) "Coated/plated with metal: Painted, or coated with organic silicate,

Polyvinylidene Flouride (PVDF)"; (3) "Coated/plated with metal: Painted, or coated with organic silicate, All Other (*i.e.*, other than PVDF)"; and (4) "Not painted, and not coated with organic silicate."  Pl.'s Br. 3; *Letter from U.S. Dep't of Commerce to Dongbu Steel Co., Ltd.* at B-7 (Sept. 13, 2006); *Letter from U.S. Dep't of Commerce to Union Steel Manufacturing Co., Ltd.* (Sept. 13, 2006).  Respondents were asked to classify their sales of subject merchandise made during the period of review into one of these four types.  Pl.'s Br. 3; *Letter from U.S. Dep't of Commerce to Dongbu Steel Co., Ltd.* at B-7 (Sept. 13, 2006); *Letter from U.S. Dep't of Commerce to Union Steel Manufacturing Co., Ltd.* (Sept. 13, 2006).

During the period of review, Union did not have sales of subject merchandise that consisted of clad products but had sales in the United States and in Korea of unpainted products, products painted with PVDF, and products in the "All Other" painted category.  Pl.'s Br. 3.  In addition, Union made sales in Korea of corrosion-resistant steel flat products that were laminated with a plastic film but had no sales of laminated products in the United States during the period of review.  *Id.* at 3-4.  In responding to Commerce's questionnaire, Union reported its sales based on the four types Commerce had described but also proposed, and reported sales based on, a product type not specified in the questionnaire: "Coated/plated with metal: Laminated with film." *See Letter from Kaye Scholer LLP to Sec'y of Commerce*, Attach. 1 at 5-6 (Nov. 20, 2006) (Admin. R. Doc. No. 52) ("*Union's Section B Resp.*"); *see also Letter from Kaye Scholer LLP to Sec'y of Commerce*, Attach. 1 at 20-21 (Feb. 2, 2007) (Admin. R. Doc. No. 99) ("*Union's Supplemental Resp.*").  Union advocated that Commerce recognize this proposed new type category by explaining that its laminated products underwent a different production process than its painted products, were physically different from its painted products because they were coated

with plastic film and not with paint, and were costlier than its painted products. *See Union's*

*Section B Resp.* 6; *see also Union's Supplemental Resp.* 20-21.

In calculating Union's antidumping duty margin for the preliminary results of the

administrative review, Commerce rejected Union's proposed new type category and grouped

within the type category of "All Other" painted products the home market sales of products

Union had categorized as laminated. Pl.'s Br. 5; *see also Mem. from Case Analysts, AD/CVD*

*Operations, Office 3, to The File* 4 (Aug. 31, 2007) (Admin. R. Doc. No. 230). Using Union's

information grouped according to Commerce's type categories, Commerce assigned Union a

preliminary antidumping duty margin of 4.35%. *Certain Corrosion-Resistant Carbon Steel Flat*

*Products from the Republic of Korea: Notice of Prelim. Results and Partial Rescission of*

*Antidumping Duty Admin. Review*, 72 Fed. Reg. 51,584, 51,588 (Sept. 10, 2007).

Commerce issued the Final Results of the thirteenth administrative review on March 17,

2008. *Final Results*, 73 Fed. Reg. 14,220. As explained in the Issues and Decision

Memorandum ("Decision Memorandum") that was incorporated into the Final Results,

Commerce once again classified as "All Other" painted products the sales of laminated subject

merchandise that Union had proposed for a separate type category. *See Issues and Decisions for*

*the Final Results of the Thirteenth Admin. Review of the Antidumping Duty Order on Certain*

*Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea (2005-2006) (Final*

*Results)* 14-15 (March 10, 2008) ("*Decision Mem.*"); *Final Results*, 73 Fed. Reg. at 14,221

(adopting the *Decision Mem.*). Commerce also rejected an argument, made by Union and by

other respondents, that Commerce should cease "zeroing" in its administrative reviews, including

the current review. *Decision Mem.* 3-5. Based on these decisions, Commerce assigned Union a final antidumping duty margin of 4.35%. *Final Results*, 73 Fed. Reg. at 14,221.

In the instant action, Union advances two claims against the United States, Compl. ¶¶ 7-16, and moves for judgment upon the agency record pursuant to USCIT Rule 56.2. Pl. Union Steel's Mot. for J. upon the Agency R.; *see also* Pl.'s Br. Union's first claim is that Commerce failed to explain how the model match criteria utilized by the agency could be reasonable or supported by substantial evidence. Compl. ¶¶ 15-16; *see also* Pl.'s Br. 13. Plaintiff's second claim is that Commerce's construction of 19 U.S.C. § 1677(35) to allow zeroing, as applied in the subject review, is contrary to law. Compl. ¶¶ 7-14; Pl.'s Br. 29-39. Pursuant to plaintiff's motion, the court held oral argument on April 24, 2009. Mot. for Oral Argument 1.

## II. DISCUSSION

The court exercises jurisdiction under 28 U.S.C. § 1581(c), pursuant to which the court reviews actions commenced under 19 U.S.C. § 1516a (2006), including an action contesting the final results of an administrative review that Commerce issues under 19 U.S.C. § 1675(a) (2006). 28 U.S.C. § 1581(c) (2006). The court will uphold the Department's determination unless it is unsupported by substantial evidence on the record or otherwise not in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

A. A Voluntary Remand Is Appropriate to Allow Commerce to Review and Reconsider the
Model Match Methodology It Applied to Union's Sales

In support of its first claim, plaintiff argues that laminated corrosion-resistant carbon steel flat products are distinct from painted (both PVDF painted and "All Other" painted) corrosion-

resistant carbon steel flat products with respect to cost, price, commercial identity, and use. *See* Pl.'s Br. 3-4, 16-29. Union points to record evidence that its laminated products have physical properties that cannot be achieved by painting, such as the unrestricted expression of various patterns, superior durability, and the use of environmentally-friendly material. *Id.* at 3. Citing these claimed distinctions, plaintiff argues that Commerce's classifying of the laminated products as "All Other" painted products is unsupported by substantial evidence of record. *Id.* at 14-29. According to Union, Commerce improperly relied on its analysis from the previous (twelfth) administrative review to justify grouping within the same type category two distinctly different classes of products and failed to provide an adequate explanation for its decision. *Id.* at 13, 20-23. As relief on its first claim, plaintiff proposed a remand to Commerce with instructions that the agency revise the model match criteria to classify laminated corrosion-resistant carbon steel flat products as a separate product type. *Id.* at 40.

Nucor and U.S. Steel responded to plaintiff's brief by arguing that the court should uphold the model match methodology the Department applied in the thirteenth administrative review. Mem. in Opp'n to Pl.'s Mot. for J. on the Agency R. Filed by Def.-Intervenor United States Steel Corporation 14-27 ("U.S. Steel Resp."); Resp. Br. of Nucor Corp. 7-17 ("Nucor Resp."). Defendant, however, acknowledges that Commerce relied on the analysis applied in the twelfth administrative review, rather than on data on the record of the subject thirteenth administrative review, to justify use of its model match methodology. Def.'s Resp. to Pl.'s Mot. for J. upon the Agency R. 10 ("Def.'s Resp."). Defendant requests a partial remand "[t]o permit Commerce to consider Union Steel's reported data during this administrative review and to

determine whether this reported data would justify a revision in the model match methodology."

*Id.*

While favoring a partial remand to allow Commerce to reconsider its earlier decision not to change its model match criteria, Union also requests that the court "first consider Union's arguments prior to remanding the case" and "instruct Commerce as to the appropriate criteria to consider and apply on remand." Reply Br. of Pl. Union Steel in Supp. of its Mot. for J. upon the Agency R. 1-2 ("Pl.'s Reply"). Plaintiff maintains that doing so "will reduce the likelihood of the need for multiple remands." *Id.* at 2. Union also requests that the court first consider Union's arguments prior to remanding the case because "Union has already expended substantial resources in briefing the model-match issue." *Id.* at 1. In a submission filed after oral argument,[1] Union explained that while it "agrees with Defendant that a remand is necessary in this case, Union believes that the Court should not grant Defendant's request for voluntary remand without also making specific findings as to the legal errors in the original determination and providing instructions as to the scope and substance of the analysis to be conducted on remand."[2] Post-Oral

---

[1] At oral argument, plaintiff requested the opportunity to clarify the relief it seeks in this case by submitting a revised draft remand order and an explanation of its contents. Oral Argument Tr. 10, Apr. 24, 2009. Defendant did not oppose plaintiff's request but sought the opportunity to file a response. *Id.* at 39. Defendant-intervenors also sought the opportunity to respond to plaintiff's clarification. *Id.* at 54-55, 127. At oral argument, the court granted plaintiff's request and invited the other parties to respond to plaintiff's proposal. *Id.* at 127.

[2] Plaintiff proposes the following three remand instructions:

1. "Commerce shall determine the appropriate classification of laminated CORE within the 'Type' category in its model match hierarchy. In particular, Commerce shall determine whether laminated CORE is appropriately classified as a separate 'Type' category or whether laminated CORE should be classified together with 'other painted' CORE within a single 'Type' category."

(continued...)

Argument Submission Addressing Proposed Voluntary Remand Order 1-2 ("Pl.'s Post-Oral

Argument Submission").  Plaintiff proposes that the court reach two conclusions identifying legal

errors in the Final Results.  First, plaintiff would have the court conclude that the Department's

decision "to classify Plaintiff's laminated corrosion-resistant carbon steel flat products ("CORE")

as painted CORE is unsupported by substantial evidence." *Id.* at 2-3.  Second, plaintiff urges the

court to hold that the model match criteria applied by Commerce in the Final Results "are not

reflective of the subject merchandise because they fail to address the appropriate classification of

laminated CORE." *Id.* at 3 (quotation marks omitted).

Defendant opposes Union's proposed remand instructions.  Def.'s Resp. to Pl.'s Post-

Oral Argument Submission Addressing Its Proposed Voluntary Remand Order 1 ("Def.'s Post-

Oral Argument Submission").  Defendant proposes that the court instead issue an order stating

that "Commerce's determination regarding plaintiff's request to revise the model match

---

[2](...continued)
. . . .
2.  "If Commerce determines to classify laminated CORE within the same 'Type'
category as 'other painted' CORE, it must support that determination with
substantial evidence and persuasively explain why such a determination is
reasonable in view of the record evidence that laminated CORE is coated with
plastic whereas 'other painted' CORE is coated with paint; cost and price
differences exist between laminated and painted CORE; and Commerce's model
match hierarchy separately breaks out PVDF painted products from 'other
painted' products."
. . . .
3.  "If Commerce cannot present substantial evidence to support including
laminated CORE in the same 'Type' category in its model match hierarchy as
'other painted' products, it shall assign laminated CORE its own 'Type' category
and recalculate Plaintiff's dumping margin using this revised model match
hierarchy."

Post-Oral Argument Submission Addressing Proposed Voluntary Remand Order 4-5.

methodology is remanded to Commerce for further consideration." *Id.* at Attach. 1. Nucor and

U.S. Steel also object to Union's proposed remand instructions; in addition, U.S. Steel submits

that it does not believe a remand is necessary in this case. Def.-Intervenor's Resp. to Pl.'s

Proposed Voluntary Remand Order; Resp. of Def.-Intervenor United States Steel Corporation to

Union Steel's Proposed Remand Order and Comments 1-5 ("U.S. Steel's Post-Oral Argument

Submission").

The court considers defendant's request for a voluntary remand under the framework

established by the Court of Appeals in *SKF USA Inc. v. United States*, 254 F.3d 1022, 1027-30

(Fed. Cir. 2001), which addresses the various types of voluntary remand situations that may arise.

One such situation occurs when there are no "intervening events," *i.e.*, legal decisions that would

affect the outcome of the agency's determination, but when the agency nonetheless requests "a

remand (without confessing error) in order to reconsider its previous position." *Id.* at 1029. The

Court of Appeals opined that, under these circumstances, a reviewing court has discretion over

whether to grant a voluntary remand and that remand is generally appropriate "if the agency's

concern is substantial and legitimate" but may be refused "if the agency's request is frivolous or

in bad faith." *Id.*

The court is aware that both defendant-intervenors, at varying times during this litigation,

have opposed the issuance of a remand order on the model match issue. *See* U.S. Steel's Post-

Oral Argument Submission 1 (stating that "U.S. Steel does not believe that remand is warranted

in this case"); U.S. Steel Resp. 14-26 (arguing that Commerce properly denied Union's request to

revise the established model-match criteria); Nucor Resp. 24 (arguing that Commerce should

affirm the portions of the Final Results challenged by plaintiff). The court, however, will not

overlook the salient point that defendant itself has called into question an aspect of the Final

Results, *i.e.*, the Department's basing its model match decision on an analysis applied in the prior

review and not on a consideration of the body of evidence on the record of this review.

The court rejects the proposed conclusions and remand instructions urged by plaintiff.

Such a remand could not be described as a "voluntary" remand, and Union essentially requests

that the court, prior to issuing a remand order, review the Department's model match

determination on the merits. *See* Pl.'s Reply 1-2, 15; Oral Argument Tr. 17-18, April 24, 2009;

Pl.'s Post-Oral Argument Submission 1-2 (stating that the court "should not grant Defendant's

request for a voluntary remand without also making specific findings as to the legal errors in the

original determination and providing instructions as to the scope and substance of the analysis to

be conducted on remand"). The court, in its discretion, declines to review on the merits a

determination that defendant has described at oral argument as "at best confusing," Oral Arg.

Tr. 42, and with respect to which defendant indicated that it could not "tell [the court] why it's

reasonable in this administrative review . . . and that is the reason why we asked for the remand."

*Id.* at 47. Defendant acknowledges that "Commerce's final decision lacks any analysis of the

record evidence of the thirteenth administrative review and lacks any analysis of the model match

issue, except to refer to the final decision in the twelfth administrative review." Def.'s Post-Oral

Argument Submission 4. Defendant thus raises the question as to whether Commerce acted

properly in relying on data from a previous review, rather than the current review, for its decision

to deny Union's request to change the model match methodology. *See id.* at 2 (explaining that

Commerce is requesting remand to "reconsider Union's request to revise the model match

methodology during the thirteenth administrative review" because the Final Results "failed to

address record information regarding Union's proposed classification of laminated CORE in a separate category from painted CORE"). Defendant's reason for requesting a remand is "substantial and legitimate." *See SKF USA Inc.*, 254 F.3d at 1029. Under these circumstances, judicial review of the model match decision in the Final Results would not serve the goal of judicial economy.

Contrary to Union's arguments, the court is not in a position to presume that an additional remand will be necessary. It is axiomatic that the remand redetermination the Department files with the court must stem from a good faith reconsideration of the model match decision. It must be supported by findings of fact grounded in substantial evidence on the record of this review, and it must adhere to statutory requirements, including the requirement that the Department achieve accurate dumping margins through lawful comparisons of the sales of subject merchandise with home market sales of foreign like products. A conclusion by Commerce that the model matches made during the thirteenth review were not lawful necessarily would require redetermination of Union's margin upon remand. Although the court does not adopt plaintiff's proposed remand instructions and exercises its discretion to grant defendant's request for a voluntary remand, the court, in adopting the substance of defendant's proposed remand language, effects certain modifications appropriate to the circumstances of this case.

### B. Commerce's Use of Zeroing in the Final Results Was Lawful

Plaintiff's second claim challenges the method Commerce used to calculate Union's weighted-average dumping margin. To calculate a weighted-average dumping margin in an administrative review, Commerce first must determine, for each entry of subject merchandise falling within the period of review, the normal value and the export price (or the constructed

export price if the export price cannot be determined).  19 U.S.C. § 1675(a)(2)(A)(i).  Commerce

then determines a margin for each entry according to the amount by which the normal value

exceeds the export price or constructed export price.  19 U.S.C. §§ 1675(a)(2)(A)(ii),

1677(35)(A) (2006); *Decision Mem.* 4.  If the export price or constructed export price on a

particular entry is higher than normal value, Commerce, in calculating a weighted-average

margin, assigns a margin of zero, not a negative margin, to the entry.  *See Decision Mem.* 4.

Finally, Commerce aggregates these individual margins in determining a weighted-average

dumping margin.  19 U.S.C. § 1677(35)(B).

Plaintiff argues that Commerce's construction of 19 U.S.C. § 1677(35), pursuant to

which Commerce engaged in zeroing in this administrative review, *see Decision Mem.* 4, is

unreasonable and therefore not in accordance with law.  Pl.'s Br. 34-39.  Union acknowledges

that the Court of Appeals and the Court of International Trade consistently have upheld

Commerce's practice of zeroing in administrative reviews.  *Id.* at 29.  Union argues, however,

that a determination Commerce issued under Section 123 of the Uruguay Round Agreements

Act, 19 U.S.C. § 3533(g) (2006), to implement recommendations of the World Trade

Organization Dispute Settlement Body ("Section 123 Determination") has adopted a new

interpretation of § 1677(35) that "justifies a fresh review of this issue by this Court."  *Id.* at 30

(citing *Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margin

During an Antidumping Investigation; Final Modification*, 71 Fed. Reg. 77,722 (Dec. 27, 2006)

("*Section 123 Determination*")).  According to Union's argument, in issuing the Section 123

Determination "Commerce for the first time has interpreted [19 U.S.C. § 1677(35)] to mean one

thing with respect to antidumping investigations (that weighted average dumping margins should

be calculated without zeroing negative dumping margins), and to mean the exact opposite with respect to antidumping administrative reviews (that weighted average dumping margins should be calculated by zeroing negative dumping margins)." *Id.* at 30. Referring to the second step of the Supreme Court's analysis in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), Union submits that "[t]o the best of our knowledge, no court has yet considered the question of whether Commerce's new statutory interpretation–that [19 U.S.C. § 1677(35)] provides for zeroing in reviews but not in investigations–is reasonable within the meaning of step two of *Chevron*." *Id.* at 30-31 (footnote omitted). Union argues that Commerce's construction of 19 U.S.C. § 1677(35) is not reasonable.

According to Union, the upholding of zeroing by the Court of Appeals in *Timken Co. v. United States*, 354 F.3d 1334 (Fed. Cir. 2004), and *Corus Staal BV v. Department of Commerce*, 395 F.3d 1343 (Fed. Cir. 2005) ("*Corus I*"), "was expressly premised on the fact that *the same statutory provision* governed the weight-averaging element of [Commerce's] dumping margin methodology and that [Commerce] was applying that provision consistently in both types of proceedings." Pl.'s Reply 12-13. According to Union, the Section 123 Determination removed this underlying premise of the holdings of the Court of Appeals affirming the use of zeroing, and for this reason the court should conduct a new *Chevron* step-two analysis of Commerce's current statutory interpretation to determine whether those prior holdings are still valid. *Id.* at 13-14. Union argues that an "interpretation of the identical statutory provision to have two diametrically opposite meanings is unreasonable and directly contrary to the previous holding of the Federal Circuit in *Corus I*, 395 F.3d at 1347, and *Timken*, 354 F.3d 1334, 1341-42." *Id.* at 11.

Relying on *Corus Staal BV v. United States*, 502 F.3d 1370 (Fed. Cir. 2007) ("*Corus II*"), defendant responds that the Court of Appeals has held unequivocally that Commerce's decision to discontinue zeroing in investigations did not affect administrative reviews. Def.'s Resp. 11-12. Defendant also argues that *Corus I* and *Timken* do not require Commerce to interpret 19 U.S.C. § 1677(35) consistently in antidumping investigations and administrative reviews, *id.* at 13, and that Commerce may interpret a statutory provision differently in different contexts. *Id.* at 16-17. Defendant-intervenors, relying on 19 U.S.C. § 1677f-1(d) (2006), contend that zeroing is required by statute in all antidumping proceedings. U.S. Steel Resp. 27-33; Nucor Resp. 17-19. In the alternative, defendant-intervenors argue that zeroing is permissible under the statute. U.S. Steel Resp. 33-39; Nucor Resp. 19-23.

Ruling on Union's claim challenging the use of zeroing in the thirteenth administrative review requires the court to decide, initially, whether one or more of the Court of Appeals decisions that address the question of zeroing are controlling in this case. Only if no such decision is controlling is the court free to conduct what is, in Union's formulation, "a fresh review of this issue." *See* Pl.'s Br. 30. In other words, Union's argument is, first, that the question of statutory construction presented by this case is one of first impression and, second, that the court must conclude that Commerce's statutory construction was unreasonable.

Commerce discussed its construction of 19 U.S.C. § 1677(35) in the Decision Memorandum:

> Section 771(35)(A) of the Act [19 U.S.C. § 1677(35)(A)] defines "dumping margin" as the "amount by which the normal value *exceeds* the export price or the constructed export price of the subject merchandise." (Emphasis added). Outside the context of antidumping investigations involving average-to-average comparisons, the Department interprets this statutory definition to mean that a

dumping margin exists only when normal value (NV) is greater than export or constructed export price (CEP). As no dumping margins exist with respect to sales where NV is equal to or less than export or CEP, the Department will not permit these non-dumped sales to offset the amount of dumping found with respect to other sales.

*Decision Mem*. 4. As the quoted language indicates, Commerce applied in this administrative review a construction of § 1677(35)(A) that it applies generally but that it does not apply in the specific situation in which it conducts an average-to-average comparison in an antidumping investigation. The exception Commerce makes for average-to-average comparisons in investigations stems from U.S. action to implement certain decisions of the World Trade Organization ("WTO") concluding that zeroing as applied in various U.S. antidumping investigations was inconsistent with U.S. international obligations under Article 2.4.2 of the Agreement on the Implementation of Article VI of the General Agreement on Tariffs and Trade. It was for this purpose that Commerce issued the Section 123 Determination on December 27, 2006, announcing that "the Department will no longer make average-to-average comparisons in investigations without providing offsets for non-dumped comparisons." *Section 123 Determination*, 71 Fed. Reg. at 77,722. In the Section 123 Determination, Commerce stated that it was declining to adopt in any other segment of an antidumping proceeding the change it announced to its procedure for average-to-average comparisons in investigations. *Id.* at 77,724. Commerce set an effective date of February 22, 2007 for that change.[3]

---

[3] Although the Section 123 Determination announced an effective date of January 16, 2007, Commerce later announced a delay in the effective date to February 22, 2007. *Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margins in Antidumping Investigations; Change in Effective Date of Final Modification,* 72 Fed. Reg. 3783 (Jan. 26, 2007).

In *Corus II*, the Court of Appeals upheld as reasonable Commerce's use of zeroing in the second administrative review of an antidumping duty order on hot-rolled steel from the Netherlands. *See Corus II*, 502 F.3d at 1372. The plaintiff in *Corus II* argued that a number of events subsequent to Commerce's issuing final results in the second administrative review "demonstrate that Commerce had abandoned the policy of zeroing." *Id.* at 1373. Those events included Commerce's action to implement instructions from the U.S. Trade Representative, issued April 23, 2007 under Section 129 of the Uruguay Round Agreements Act, 19 U.S.C. § 3538 (2006), in response to a WTO decision with respect to eleven specific antidumping investigations. *Corus II*, 502 F.3d at 1374; *Implementation of the Findings of the WTO Panel in US-Zeroing (EC): Notice of Determinations Under Section 129 of the Uruguay Round Agreements Act and Revocations and Partial Revocations of Certain Antidumping Duty Orders*, 72 Fed. Reg. 25,261 (May 4, 2007). In rejecting the argument made by the plaintiff in *Corus II*, the Court of Appeals also discussed the relevance of the Section 123 Determination to that plaintiff's claim:

> When Commerce announced the elimination of zeroing in conjunction with the use of average-to-average comparisons to calculate dumping margins in antidumping investigations, it stated that the new policy did not apply to any other proceedings, including administrative reviews. *Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margin During an Antidumping Investigation; Final Modification*, 71 Fed. Reg. 77772, 77722-24 (Dec. 27, 2006). Thus, Commerce's new policy has no bearing on the present appeal, just as it had no effect on the final determination of Corus's fourth administrative review.

*Id.* at 1374. The Court of Appeals addressed the effect of the Section 123 Determination and the related developments by stating that "[t]o the extent recent developments have changed the current scheme, Commerce has made it clear that those changes do not apply retroactively to

administrative reviews.  Thus, our previous determination [in *Corus I*, 395 F.3d at 1349] that Commerce's policy of zeroing is permissible under the statute applies to the challenged administrative review." *Id.* at 1375.  In this way, the Court of Appeals in *Corus II* made it amply clear that it did not consider Commerce's decision to discontinue zeroing when performing average-to-average comparisons in antidumping investigations while continuing zeroing in administrative reviews to be a sufficient basis to disturb its precedents, under which it had held zeroing to be permissible in administrative reviews based on the reasonableness of the Department's construction of 19 U.S.C. § 1677(35).  Because the holding of the Court of Appeals in *Corus II* is controlling on the question presented by Union's zeroing claim, the court must uphold as reasonable the construction of 19 U.S.C. § 1677(35) that Commerce set forth in the Decision Memorandum.  Union's argument that the Section 123 Determination marked the first time that Commerce has interpreted 19 U.S.C. § 1677(35) "to mean one thing with respect to antidumping investigations . . . and to mean the exact opposite with respect to antidumping administrative reviews," Pl.'s Br. 30, does not suffice to distinguish the zeroing claim it makes in this case from the precedent established by *Corus II*.

In *NSK Ltd. v. United States*, 510 F.3d 1375 (Fed. Cir. 2007), the Court of Appeals followed an approach similar to that of *Corus II*, rejecting the argument that it should hold Commerce's use of zeroing unlawful based on a decision of the WTO Dispute Settlement Body and on statements by the United States indicating that the United States would comply with that decision.  *NSK*, 510 F.3d at 1379-80.  The Court of Appeals explained that

> until Commerce abandons zeroing in administrative reviews such as this one, a
> remand in this case would be unavailing.  Therefore, because Commerce's zeroing
> practice is in accordance with our well-established precedent, *until Commerce*

> *officially abandons the practice pursuant to the specified statutory scheme, we affirm its continued use in this case.*

*Id.* at 1380 (emphasis added).

Union argues that *Corus II* and *NSK* are distinguishable from this case because the administrative reviews in those prior cases had been completed prior to the publication of the Section 123 Determination. Pl.'s Reply 11; Oral Argument Tr. 100. This argument is unconvincing. In *Corus II*, the Court of Appeals reasoned that the Section 123 Determination did not bear on the question of the reasonableness of Commerce's construction of 19 U.S.C. § 1677(35) to allow zeroing in administrative reviews, noting that the Section 123 Determination, by its language, did not apply to administrative reviews. *See Corus II*, 502 F.3d at 1374-75. Because of the breadth of the holding in *Corus II* and the reasoning on which that holding is based, the fact that the subject administrative review was completed on March 17, 2008, a date that was after the issuance of the Section 123 Determination and the February 22, 2007 effective date thereof, does not place this case outside of the precedent that *Corus II* establishes.

Nor does the court find merit in Union's argument that the upholding of zeroing by the Court of Appeals in *Timken* and *Corus I*, "was expressly premised on the fact that *the same statutory provision* governed the weight-averaging element of [Commerce's] dumping margin methodology and that [Commerce] was applying that provision consistently in both types of proceedings." *See* Pl.'s Reply 13. Plaintiff's interpretation of the holdings in *Timken* and *Corus I* does not withstand scrutiny when considered according to the holdings in *Corus II* and *NSK*, with which plaintiff's interpretation is plainly inconsistent.

The court's conclusion on Union's zeroing claim is in accord with the decision in *Corus Staal BV v. United States*, 32 CIT __, 593 F. Supp. 2d 1373 (2008) ("*Corus III*"), in which the Court of International Trade also considered the issue of whether it is permissible for Commerce to interpret 19 U.S.C. § 1677(35) to allow zeroing in reviews despite the discontinuation of zeroing in average-to-average comparisons in investigations. The plaintiff in *Corus III* argued that "Federal Circuit decisions upholding the use of zeroing are not binding because Commerce's interpretation of § 1677(35)(A)-(B)–which prohibits zeroing in investigations, but not in administrative reviews–is inconsistent and, therefore, unreasonable." *Corus III*, 32 CIT at __, 593 F. Supp.2d at 1383. The Court of International Trade applied a *Chevron* step-two analysis to conclude that Commerce's interpretation of 19 U.S.C. § 1677(35) is reasonable and in accordance with law, emphasizing that "[t]he Federal Circuit has repeatedly found Commerce's use of zeroing in administrative reviews to be reasonable." *Id.* at __, 593 F. Supp.2d at 1384.

### III. CONCLUSION AND ORDER

With respect to the model match issue, the court concludes that granting defendant's request for voluntary remand is appropriate in the circumstances of this case. Also, the court concludes that the Final Results must be affirmed with respect to the Department's use of zeroing based on precedent of the Court of Appeals. Therefore, upon consideration of all proceedings and submissions herein, and upon due deliberation, it is hereby

**ORDERED** that defendant's request for a partial voluntary remand of *Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea: Notice of Final Results of the Thirteenth Administrative Review* 73 Fed. Reg. 14,220 (Mar. 17, 2008) ("Final Results") be, and hereby is, GRANTED with modifications to defendant's proposed remand instructions as set forth herein; it is further

       **ORDERED** that Commerce, upon remand, shall review and reconsider its "model match" methodology, including its decision in the Final Results to deny Union Steel's request for a revision of that model match methodology, by which Commerce compared the types of subject merchandise in plaintiff's U.S. sales with the types of foreign like products in plaintiff's sales in its home market; it is further

       **ORDERED** that Plaintiff's Motion for Judgment upon the Agency Record, as filed on August 21, 2008, be, and hereby is, GRANTED only to the extent that a remand is hereby ordered under which Commerce is directed to review and reconsider its model match methodology, DENIED to the extent that plaintiff's motion requests a remand detailing the specific findings and instructions contained in plaintiff's Post-Oral Argument Submission Addressing Proposed Voluntary Remand Order, and DENIED to the extent that such motion seeks to have set aside the Department's Final Results with respect to the zeroing methodology used therein; it is further

       **ORDERED** that the requests of defendant-intervenors Nucor and U.S. Steel that the Final Results be affirmed with respect to the model match methodology used therein be, and hereby are, DENIED; it is further

       **ORDERED** that the Department shall issue upon remand a redetermination that responds to Union Steel's request that Commerce revise the model match methodology and that such redetermination shall comply with this Opinion and Order, be supported by substantial record evidence, and be in all respects in accordance with law; it is further

       **ORDERED** that the Department shall have ninety (90) days from the date of this Opinion and Order to file its redetermination upon remand in this proceeding, that plaintiff and defendant-intervenors shall have thirty (30) days from the filing of the redetermination upon remand to file comments thereon with the court, and that defendant shall have fifteen (15) days thereafter to file any reply to such comments; and it is further

       **ORDERED** that the Final Results be, and hereby are, affirmed with respect to the Department's use of zeroing methodology therein.

 

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: September 28, 2009
      New York, New York