**Slip Op. 10-13**

UNITED STATES COURT OF INTERNATIONAL TRADE

DONGBU STEEL CO., LTD. and    :
UNION STEEL MANUFACTURING CO., LTD.,

             :

      *Plaintiffs*,

             :

   v.

             :

UNITED STATES,

             :  Court No. 07-00125

      *Defendant*,

             :

   and

             :

ARCELORMITTAL USA INC. and
UNITED STATES STEEL CORPORATION, :

     *Defendant-Intervenors*. :

[Denying Plaintiffs' Motion for Judgment on the Agency Record.]

Dated: February 4, 2010

  Troutman Sanders LLP (Donald B. Cameron, Julie C. Mendoza, Jeffrey S. Grimson, R. Will Planert, Brady W. Mills, and Mary S. Hodgins), for Plaintiffs.

  Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Claudia Burke); Jonathan Zielinski, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel; for Defendant.

  Stewart and Stewart (Terence P. Stewart and William A. Fennell), for Defendant-Intervenor ArcelorMittal USA, Inc.

  Skadden, Arps, Slate, Meagher & Flom LLP (Robert E. Lighthizer, John J. Mangan, Jeffrey D. Gerrish, and Jared R. Wessel), for Defendant-Intervenor United States Steel Corporation.

# OPINION

RIDGWAY, Judge:

In this action, Plaintiffs Dongbu Steel Co., Ltd. and Union Steel Manufacturing Co., Ltd. – Korean manufacturers and exporters of the subject merchandise (collectively, the "Korean Producers") – contest the final results of the U.S. Department of Commerce's twelfth administrative review of the antidumping duty order covering certain corrosion-resistant carbon steel flat products from the Republic of Korea. *See* Notice of Final Results of the Twelfth Administrative Review of the Antidumping Duty Order on Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea, 72 Fed. Reg. 13,086 (Mar. 20, 2007) ("Final Results"); Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea; Notice of Amended Final Results of the Twelfth Administrative Review, 72 Fed. Reg. 20,815 (Apr. 26, 2007).

Pending before the Court is the Motion for Judgment on the Agency Record filed by the Korean Producers, which raises a single challenge to Commerce's Final Results. Specifically, the Korean Producers assert that Commerce's use of its controversial "zeroing" methodology in the administrative review at issue was not permissible because the agency has ceased use of zeroing in certain original antidumping investigations. The Korean Producers therefore ask that this matter be remanded to Commerce with instructions to recalculate their dumping margins without using zeroing. *See generally* Brief in Support of the Motion of Plaintiffs Dongbu Steel Co., Ltd. and Union Steel Manufacturing Co., Ltd. for Judgment Upon the Agency Record ("Pls. Brief"); Reply Brief of Plaintiffs Dongbu Steel Co., Ltd. and Union Steel Manufacturing Co., Ltd. ("Pls. Reply Brief").

The Korean Producers' motion is opposed by the Government, as well as domestic steel producers ArcelorMittal USA Inc. and United States Steel Corporation (collectively, the "Domestic Producers"). The Government and the Domestic Producers urge that Commerce's Final Results be sustained in all respects. *See generally* Defendant's Response in Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record ("Def. Brief"); Defendant-Intervenor ArcelorMittal's Opposition to Motion for Judgment on the Agency Record of Plaintiffs Dongbu Steel Co., Ltd. and Union Steel Manufacturing Co., Ltd. ("ArcelorMittal Brief"); Memorandum in Opposition to Plaintiffs' Motion for Judgment on the Agency Record filed by Defendant-Intervenor United States Steel Corporation ("U.S. Steel Brief").

Jurisdiction lies under 28 U.S.C. § 1581(c) (2000).[1] For the reasons set forth below, the Korean Producers' Motion for Judgment on the Agency Record must be denied.

## I. Background

Dumping takes place when goods are imported into the United States and sold at a price lower than their normal value. *See* 19 U.S.C. §§ 1673, 1677(34).[2] Under the antidumping laws, Commerce is required to impose antidumping duties on dumped merchandise, to offset the effects of dumping. Antidumping duty investigations (referred to herein as "original" investigations) are initiated to determine in the first instance "whether the elements necessary for the imposition of [an antidumping] duty . . . exist." 19 U.S.C. § 1673a. In addition, the statute provides for periodic

---

[1]All statutory citations herein are to the 2000 edition of the United States Code.

[2]"Normal value" is generally "the price at which the foreign like product is first sold [or offered for sale] for consumption in the exporting country." 19 U.S.C. § 1677b(a)(1).

(annual) administrative reviews of antidumping duty orders (at the request of an interested party), to update the applicable antidumping duty rate. *See* 19 U.S.C § 1675.[3] The instant case challenges the results of such an administrative review.

In an administrative review, Commerce determines the antidumping duties to be imposed by first calculating the "dumping margin" for each of a foreign producer/exporter's individual U.S. transactions (*i.e.*, entries), which is the amount by which the normal value of the imported subject merchandise exceeds the "export price" or the "constructed export price" of that merchandise. *See* 19 U.S.C. §§ 1673, 1677(35)(A).[4] Next, Commerce calculates the "weighted-average dumping margin," by "dividing the aggregate dumping margins determined for a specific exporter or producer by the aggregate export prices and constructed export prices of such exporter or producer." 19 U.S.C. § 1677(35)(B).

Commerce uses the "zeroing" methodology when calculating the weighted-average dumping margin (discussed above). *See* NSK Ltd. v. United States, 510 F.3d 1375, 1379 (Fed. Cir. 2007); Corus Staal BV v. United States, 502 F.3d 1370, 1372 (Fed. Cir. 2007) ("Corus Staal II"); Timken Co. v. United States, 354 F.3d 1334, 1338 (Fed. Cir. 2004). Specifically, Commerce "zeros"

---

[3]Absent an administrative review, merchandise is liquidated at the cash deposit rate established in the previous administrative review, or – if there has been no such administrative review – at the rate established in the original antidumping investigation. *See* 19 C.F.R. § 351.212(a) (2006); *see generally* Transcript of Oral Argument ("Tr.") at 38 (differentiating between purpose of administrative review and purpose of original antidumping investigation).

[4]Export Price ("EP") and Constructed Export Price ("CEP") refer to Commerce's two methods of calculating prices for merchandise imported into the United States. Generally, Export Price is the price at which goods are sold to a U.S. buyer not affiliated with the foreign producer or exporter *before* the goods are imported into the United States, while Constructed Export Price is the price used when the first sale to an unaffiliated U.S. buyer occurs *after* importation. *See* 19 U.S.C. §§ 1677a(a)-(b).

negative dumping margins (dumping margins with a value less than zero) by replacing the negative figure with a value of zero prior to inputting the data into the weighted-average dumping margin calculation. *See* NSK, 510 F.3d at1379; Corus Staal II, 502 F.3d at 1372; Timken, 354 F.3d at 1338. In other words, if the export price or constructed export price for a particular transaction is higher than normal value, Commerce assigns a margin of zero – rather than a negative margin – to that transaction.

As a result, "only positive dumping margins (*i.e.*, margins for sales of merchandise sold at dumped prices) [are] aggregated, and negative margins (*i.e.*, margins for sales of merchandise sold at nondumped prices) [are] given a value of zero." Corus Staal BV v. United States, 395 F.3d 1343, 1345-46 (Fed. Cir. 2005) ("Corus Staal I"). Use of Commerce's zeroing methodology thus prevents negative dumping margins from reducing the overall sum of the dumping margins. *See* NSK, 510 F.3d at1379; Corus Staal II, 502 F.3d at 1372 ("when Commerce calculates the weighted average dumping margin, the dumping margins for sales below normal value are not offset by 'negative dumping margins' for those sales made above normal value"). In short, zeroing – in effect – increases a producer/exporter's dumping margin (resulting in higher antidumping duties), or results in a finding of dumping where (absent the use of zeroing) dumping would not be found.

Commerce's zeroing methodology has spawned a cottage industry of litigation, both at home and abroad. The agency's "long-standing practice" has withstood repeated attack here at home. *See* NSK, 510 F.3d at 1379. Under a deferential Chevron step two analysis, the Court of Appeals has upheld as reasonable Commerce's original interpretation of the statute as authorizing zeroing in both original antidumping investigations and administrative reviews. Thus, in an unbroken line of

decisions, the Court of Appeals has sustained Commerce's use of zeroing both in original antidumping investigations, *see*, *e.g.*, Corus Staal I, 395 F.3d at 1347, and in administrative reviews, *see*, *e.g.*, Koyo Seiko Co. v. United States, 551 F.3d 1286, 1291 (Fed. Cir. 2008); NSK, 510 F.3d at 1380; Timken, 354 F.3d at 1342-44.[5]

But the situation abroad is quite a different story. The World Trade Organization ("WTO") Dispute Settlement Body has repeatedly ruled that Commerce's use of zeroing – in both original investigations and administrative reviews – is inconsistent with the United States' obligations under the WTO antidumping agreements. *See generally*, *e.g.*, NSK, 510 F.3d at 1379 (discussing WTO rulings); U.S. Steel Corp. v. United States, 33 CIT ____, ____, 637 F. Supp. 2d 1199, 1206-07 (2009) (discussing additional WTO rulings), *appeal docketed*, No. 2009-1572 (Fed. Cir. Sept. 16, 2009). In accordance with Sections 123 and 129 of the Uruguay Round Agreements Act ("URAA"), Commerce has implemented aspects of these adverse WTO rulings.[6] Of particular relevance here,

_____

[5]*See also* SKF USA Inc. v. United States, 537 F.3d 1373, 1382 (Fed. Cir. 2008); Corus Staal II, 502 F.3d at 1373-74; SKF USA Inc. v. United States, 33 CIT ____, 2009 WL 4931671 at * 10-11 (2009); JTEKT Corp. v. United States, 33 CIT ____, ____, 2009 WL 4897287 at * 3-6 (2009); SKF USA Inc. v. United States, 33 CIT ____, ____, ____ F. Supp. 2d ____, ____, 2009 WL 3443403 at * 7-8 (2009), *appeal docketed*, No. 2010-1128 (Fed. Cir. Dec. 18, 2009); Union Steel v. United States, 33 CIT ____, ____, 645 F. Supp. 2d 1298, 1305-09 (2009); Fujian Lianfu Forestry Co. v. United States, 33 CIT ____, _____, 638 F. Supp. 2d 1325, 1356-57 (2009); SKF USA Inc. v. United States, 33 CIT ____, ____, 611 F. Supp. 2d 1351, 1356-60 (2009); Corus Staal BV v. United States, 32 CIT ____, ____, 593 F. Supp. 2d 1373, 1382-87 (2008) ("Corus Staal-CIT 2008"), *appeal docketed*, No. 2009-1425 (Fed. Cir. July 1, 2009); *cf*. Searing Indus. v. United States, 33 CIT ____, ____, 2009 WL 3683393 (2009) (discussing zeroing in context of challenge to Commerce's offsetting methodology); U.S. Steel Corp. v. United States, 33 CIT ____, 627 F. Supp. 2d 1374 (2009) (same).

[6]Sections 123 and 129 of the URAA set forth the procedures used to bring agency regulations and practices into compliance with WTO rulings. A determination pursuant to Section 123 amends, rescinds, or modifies an agency regulation or practice found to be inconsistent with any of the Uruguay Round Agreements. *See* 19 U.S.C. § 3533(g). A Section 129 determination amends,

in its "Section 123 Determination" promulgated in response to one of the WTO rulings, Commerce announced its decision to discontinue the use of zeroing in certain original antidumping investigations. *See* Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margin During an Antidumping Investigation; Final Modification, 71 Fed. Reg. 77,722 (Dec. 27, 2006) ("Section 123 Determination").[7]   In that same Section 123 Determination, however, Commerce expressly declined to cease the use of zeroing in any other context – including antidumping administrative reviews, such as the administrative review at issue in this action. *See* Section 123 Determination, 71 Fed. Reg. at 77,724.

Since the Section 123 Determination issued, courts have sustained Commerce's continued use of zeroing in administrative reviews while ceasing the practice in certain original antidumping investigations. *See*, *e.g.*, Corus Staal II, 502 F.3d at 1373-74; JTEKT Corp. v. United States, 33 CIT ____, ____, 2009 WL 4897287 at * 3-6 (2009); Union Steel v. United States, 33 CIT ____, ____,

---

rescinds or modifies the application of an agency regulation or practice in a specific agency proceeding that is found to be inconsistent with the United States' WTO obligations. *See* 19 U.S.C. § 3538; *see generally* U.S. Steel, 33 CIT at ____, 637 F. Supp. 2d at 1205-06 (discussing Section 123 procedures and Section 129 procedures).

[7]The Section 123 Determination stated that Commerce was ceasing zeroing only in original antidumping investigations involving "average-to-average" comparisons. *See* Section 123 Determination, 71 Fed. Reg. at 77,724.  In an original antidumping investigation, Commerce makes its "less than fair value" determination in one of three ways – (1) *by using average-to-average comparisons* (*i.e.*, "by comparing the weighted average of the normal values to the weighted average of the export prices (and constructed export prices) for comparable merchandise"); (2) by using transaction-to-transaction comparisons (*i.e.*, "by comparing the normal values of individual transactions to the export prices (or constructed export prices) of individual transactions for comparable merchandise"); or (3) by using average-to-transaction comparisons (*i.e.*, "by comparing the weighted average of the normal values to the export prices (or constructed export prices) of individual transactions for comparable merchandise").  *See* 19 U.S.C. § 1677f-1(d)(1)(A)-(B) (emphasis added); *see also* Tr. at 38-39 (summarizing three methods of calculation – "average-to-average," "transaction-to-transaction," and "average-to-transaction").

645 F. Supp. 2d 1298, 1305-09 (2009); <u>Fujian Lianfu Forestry Co. v. United States</u>, 33 CIT \_\_\_\_,

\_\_\_\_\_, 638 F. Supp. 2d 1325, 1356-57 (2009); <u>Corus Staal BV v. United States</u>, 32 CIT \_\_\_\_, \_\_\_\_,

593 F. Supp. 2d 1373, 1382-87 (2008) ("<u>Corus Staal-CIT 2008</u>"), *appeal docketed*, No. 2009-1425

(Fed. Cir. July 1, 2009).

Against this backdrop, the Korean Producers here assert yet another in a long line of

challenges to Commerce's use of zeroing in administrative reviews, contesting the agency's Final

Results in the twelfth administrative review of the antidumping duty order on corrosion-resistant

carbon steel flat products from Korea. In the Final Results, Commerce determined, *inter alia*, the

weighted-average dumping margins for Dongbu and Union Steel. *See* Final Results, 72 Fed. Reg.

at 13,087.[8] As in prior administrative reviews, in calculating the Korean Producers' weighted-

average dumping margins, Commerce zeroed the negative dumping margins of individual U.S.

transactions.

The Korean Producers did not raise the subject of zeroing in their case briefs or their rebuttal

briefs filed with Commerce in the course of the administrative review, although the agency's

Preliminary Results employed the methodology, and notwithstanding the fact that the agency had

previously given notice of a proposal to cease the use of zeroing in certain original antidumping

investigations. *See* Def. Brief at 7-8; Transcript of Oral Argument ("Tr.") at 40-41; Antidumping

Proceedings: Calculation of the Weighted Average Dumping Margin During an Antidumping Duty

---

[8]The Final Results were thereafter amended to correct a ministerial error in the calculation of Union Steel's dumping margin, resulting in a slight increase in that margin. *See* Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea; Notice of Amended Final Results of the Twelfth Administrative Review, 72 Fed. Reg. 20,815 (Apr. 26, 2007).

Investigation, 71 Fed. Reg. 11,189 (Mar. 6, 2006) ("Proposed Section 123 Determination").

However, after the final Section 123 Determination issued (officially ceasing zeroing in certain

original antidumping investigations), the Korean Producers sent Commerce a letter citing that

determination and protesting the continued use of zeroing in the then-ongoing administrative review.

*See* Tr. at 41, 62, 69-70.  Commerce rejected the Korean Producers' submission as untimely.  *See*

*id*.  The Korean Producers thus renew their objections here.

## II.  **Standard of Review**

In reviewing Commerce's final determination in an antidumping proceeding, the agency's

determination must be upheld, except to the extent that it is found "to be unsupported by substantial

evidence on the record, or otherwise not in accordance with law."  *See* 19 U.S.C. §

1516a(b)(1)(B)(i);  *see also* NMB Singapore Ltd. v. United States, 557 F.3d 1316, 1319 (Fed. Cir.

2009).  Substantial evidence is "more than a mere scintilla"; rather, it is "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion."  Universal Camera Corp. v.

Nat'l Labor Relations Bd., 340 U.S. 474, 477 (1951) (*quoting* Consol. Edison Co. v. Nat'l Labor

Relations Bd., 305 U.S. 197, 229 (1938)); *see also* Mittal Steel Point Lisas Ltd. v. United States, 548

F.3d 1375, 1380 (Fed. Cir. 2008) (same).

To determine whether an agency's interpretation of a statute is in accordance with law, the

two-part test set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S.

837 (1984) is applied.  *See* Corus Staal I, 395 F.3d at 1346; Timken, 354 F.3d at 1341.  The first step

of a Chevron analysis  requires a determination as to "whether Congress has directly spoken to the

precise question at issue."  Chevron, 467 U.S. at 842.  "If the intent of Congress is clear, that is the

end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. at 842-43; *see also* Corus Staal I, 395 F.3d at 1346. However, "if the statute is silent or ambiguous with respect to the specific issue" in question, the analysis proceeds to Chevron step two, where "the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843.

Under the second step of a Chevron analysis, "[a]ny reasonable construction of the statute is a permissible construction." Timken, 354 F.3d at 1342 (*quoting* Torrington v. United States, 82 F.3d 1039, 1044 (Fed. Cir. 1996)) (internal quotation marks omitted). "To survive judicial scrutiny, [Commerce's] construction need not be the only reasonable interpretation or even the most reasonable interpretation . . . . Rather, a court must defer to an agency's reasonable interpretation of a statute even if the court might have preferred another." Timken, 354 F.3d at 1342 (*quoting* Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994) (*citing* Zenith Radio Corp. v. United States, 437 U.S. 443, 450 (1978))) (internal quotation marks omitted). Indeed, the Court of Appeals has underscored that, "[i]n recognition of Commerce's expertise in the field of antidumping investigations," Corus Staal I, 395 F.3d at 1346, "[d]eference to [the] agency's statutory interpretation is at its peak in the case of a court's review of Commerce's interpretation of the antidumping laws." Koyo Seiko, 36 F.3d at 1570.

### III. Analysis

In their sole claim challenging Commerce's Final Results, the Korean Producers contend that Commerce's new interpretation of the antidumping statute – precluding zeroing in certain original antidumping investigations, but continuing the practice in administrative reviews – is unreasonable

and impermissible under the second step of <u>Chevron</u>. The Korean Producers assert that Commerce's new interpretation effectively strips away a key premise underpinning the Court of Appeals precedent sustaining the agency's practice of zeroing. *See* Pls. Brief at 6, 8, 12, 19; Pls. Reply Brief at 4, 8-10. The Korean Producers argue that the Court of Appeals' <u>Chevron</u> analysis is therefore no longer valid, and that a new <u>Chevron</u> step two analysis is required. *See* Pls. Brief at 8, 12; Pls. Reply Brief at 10. The Korean Producers further maintain that Commerce's new interpretation of the statute cannot withstand <u>Chevron</u> step two scrutiny. *See* Pls. Brief at 7, 13-19; Pls. Reply Brief at 7-15. Accordingly, the Korean Producers conclude that this matter must be remanded to Commerce with instructions to recalculate their dumping margins without using zeroing. *See* Pls. Brief at 20; Pls. Reply Brief at 15.

The Government asserts, as a threshold matter, that the Korean Producers failed to exhaust their administrative remedies, and that their challenge to Commerce's use of zeroing is thus not properly before the Court. *See generally* Def. Brief at 5, 7-8. In the alternative, the Government and the Domestic Producers contend that the propriety of Commerce's use of zeroing in administrative reviews is a well-settled matter, and that the Korean Producers' arguments do nothing to cast doubt on the continued vitality of the Court of Appeals decisions upholding the agency's statutory interpretation authorizing zeroing in cases such as this. *See generally* Def. Brief at 5, 8-11; ArcelorMittal Brief at 2, 6-13; U.S. Steel Brief at 7-8, 15-22. The Government and the Domestic Producers further contend that, even if Commerce's new statutory interpretation were to be subjected to a new <u>Chevron</u> step two analysis, that interpretation would be sustained. *See*, *e.g.*, Def. Brief at 11-15; ArcelorMittal Brief at 13-17. U.S. Steel even goes so far as to argue that zeroing is

not merely permitted by the statute, it is required.  *See* U.S. Steel Brief at 6-7, 8-15.

As outlined below, the doctrine of exhaustion of administrative remedies does not bar consideration of the merits of the Korean Producers' claim.  However, the Court of Appeals has spoken definitively, and repeatedly, on the subject of zeroing.  The Korean Producers' arguments here simply do not warrant revisiting the established line of Court of Appeals precedent sustaining Commerce's statutory interpretation permitting zeroing in administrative reviews.  The Korean Producers' Motion for Judgment on the Agency Record therefore must be denied.

### A.  Exhaustion of Administrative Remedies

The Government initially contends that the Korean Producers are "attempt[ing] to challenge Commerce's zeroing methodology without ever having raised the issue before the agency," and argues that the Korean Producers' claim is thus precluded by the doctrine of exhaustion of administrative remedies.  *See generally* Def. Brief at 5, 7-8; Tr. at 15-20, 25-28, 57-58, 61-64, 77-78.[9]  The Government's reliance on the doctrine of exhaustion is misplaced.

---

[9]As discussed above, although the Korean Producers did not raise the issue of zeroing in their case brief or rebuttal brief filed in the administrative review, they did submit a letter to Commerce – after the final Section 123 Determination issued – protesting the continued use of zeroing in the administrative review here at issue.  Commerce rejected the Korean Producers' letter as untimely.  *See* Section I, *supra*.

The Government is thus less than fully candid when it accuses the Korean Producers of "attempt[ing] to challenge Commerce's zeroing methodology without ever having raised the issue before the agency."  *See* Def. Brief at 7; *see also id.* at 5 (asserting that "at no time did [the Korean Producers] raise a challenge [to zeroing] before Commerce"), 8 (arguing that "[h]ad [the Korean Producers] raised the [zeroing] issue before Commerce," the agency could have addressed the subject in the Final Results).  ArcelorMittal is guilty of the same offense.  *See* ArcelorMittal Brief at 17 n.6 (stating that "[n]either Dongbu nor Union sought to raise the issue of [zeroing] with the Department following the December 2007 [issuance of the final Section 123 Determination]").

According to the Government, the Korean Producers were obligated to raise their objections to zeroing in their case brief filed in the course of the administrative review. The Government observes that, by that time, the Korean Producers were on notice that Commerce was applying zeroing in their case (since zeroing was used in the Preliminary Results in the administrative review), and, further, that the Proposed Section 123 Determination had issued (indicating Commerce's tentative plans to cease zeroing in certain original antidumping investigations). *See* Def. Brief at 5, 7-8; Proposed Section 123 Determination, 71 Fed. Reg. at 11,189.

But the Government attaches undue weight to Commerce's Proposed Section 123 Determination. Given the preliminary and tentative nature of the document (which sought public comment on Commerce's proposal), the Proposed Section 123 Determination simply did not suffice to trigger any duty on the part of the Korean Producers to raise any objections that they may have had in the administrative review. Although the Korean Producers might have been well-advised to raise their concerns in their case briefs filed with the agency (concerns which, by definition, would have been somewhat hypothetical), they were under no legal obligation to do so.

In a situation such as this, the law does not require a party to be prescient, and to be able to precisely predict the timing and the exact contours of collateral final government action that may have a bearing on its case. Until the final Section 123 Determination issued (by which time briefing in the administrative review was complete), there was no official determination by Commerce that zeroing would cease only in certain original antidumping investigations.[10]   The doctrine of

---

[10]It is worth noting that the public comments on Commerce's Proposed Section 123 Determination included comments urging the agency to abandon the zeroing methodology vis-a-vis *all* antidumping proceedings – not just in certain original antidumping investigations, as the agency

exhaustion of administrative remedies thus has no application here, because the Korean Producers' objections were not yet ripe at the time case briefs were due in the administrative review. The Korean Producers were not required to exhaust their remedies before the agency, because there was nothing to exhaust. *See* Tr. at 41-42, 49, 69-70; *see also* Zhengzhou Harmoni Spice Co. v. United States, 33 CIT ____, ____ n.49, 617 F. Supp. 2d 1281, 1318 n.49 (2009); *cf.* Consol. Bearings Co. v. United States, 348 F.3d 997, 1003-04 (Fed. Cir. 2003) (rejecting Government's claim that plaintiff failed to exhaust its remedies, and concluding that there simply was "[no] administrative procedure to exhaust").

The Korean Producers assert that – even if the doctrine of exhaustion of administrative remedies were applicable (which it is not) – their failure to raise the issue of zeroing in their briefs filed with Commerce could be excused under either of two widely-recognized exceptions to the doctrine of exhaustion – the "pure question of law" exception and the "futility" exception. *See generally* Pls. Reply Brief at 1-3; Tr. at 40-43.

In the instant case, there is no need for agency development of a factual record. And the Korean Producers' challenge to Commerce's new statutory interpretation presents a "pure question of law." As in Agro Dutch, "[s]tatutory construction alone" is sufficient to resolve the merits of the

_____

proposed. *See* Section 123 Determination, 71 Fed. Reg. at 77,724. Similarly, if issuance of the final Section 123 Determination had been delayed until after Commerce had issued the Final Results of the administrative review in question, the Korean Producers might have considered retroactivity an insurmountable hurdle, and thus might not have objected to Commerce's use of zeroing in the instant administrative review. *See* Section 123 Determination, 71 Fed. Reg. at 77,722 (noting that Commerce extended the period of time for filing of comments); *id.* at 77,724-25 (discussing public comments as to whether a new agency policy on zeroing should apply to ongoing proceedings, as well as whether it should apply retroactively).

Korean Producers' claim. *See* Agro Dutch Indus. Ltd. v. United States, 508 F.3d 1024, 1029 (Fed. Cir. 2007) (*quoting* Consol. Bearings, 348 F.3d at 1003) (internal quotation marks omitted). Further, as in Agro Dutch, "Commerce has not persuasively articulated . . . how additional proceedings [at the agency level] would [have] further develop[ed] the interpretation offered here" and elsewhere by the agency. *See* Agro Dutch, 508 F.3d at 1029 n.4. Thus – even assuming that the doctrine of exhaustion applied in this case – the "pure question of law" exception would permit the Korean Producers to pursue their zeroing claim in this forum.

Similarly, it is well established that "[a] party need not exhaust [its] administrative remedies where invoking such remedies would be futile." *See* Asociacion Colombiana de Exportadores de Flores v. United States, 916 F.2d 1571, 1575 (Fed. Cir. 1990). Although the "futility" exception is a narrow one, the Korean Producers pointedly note that "even Commerce does not contend that had [the Korean Producers] raised [their zeroing] argument during the administrative proceedings, there is any possibility that the agency would have altered its zeroing methodology as applied in [the administrative] review" at issue here. *See* Pls. Reply Brief at 3; Tr. at 42-43; *see also* Corus Staal II, 502 F.3d at 1379 (noting that "futility" exception is narrow). Accordingly, assuming that the doctrine of exhaustion applied in this case (which it does not), the Korean Producers could also rely on the "futility" exception to litigate their zeroing claim here.

The Court of Appeals has repeatedly held that, in trade cases, the application of the principles of the doctrine of exhaustion of remedies is a matter committed to the sound discretion of this court. *See*, *e.g.*, Corus Staal II, 502 F.3d at 1381 (and cases cited there). As detailed above, the doctrine of exhaustion does not apply in this case; and, even if it did, several exceptions

nevertheless would permit the Korean Producers to seek judicial review of their zeroing claims. The doctrine of exhaustion therefore does not preclude consideration of the merits of the Korean Producers' arguments; and the Government's assertions to the contrary must be rejected.

### B. Commerce's Use of Zeroing in Administrative Reviews

The Korean Producers contend that Commerce's construction of 19 U.S.C. § 1677(35) – the basis for the agency's use of zeroing in this administrative review – is not reasonable, and is therefore not in accordance with law. *See* Pls. Brief at 2, 6, 17, 19, 20; Pls. Reply Brief at 4, 12, 13-14; Tr. at 6. The Korean Producers candidly acknowledge the long and unbroken line of decisions by the Court of Appeals and the Court of International Trade which have consistently upheld Commerce's practice of zeroing, both in original antidumping investigations and in administrative reviews. *See* Pls. Brief at 6, 7; Tr. at 2-3, 51, 85. But the Korean Producers argue that Commerce's new statutory interpretation set forth in the agency's Section 123 Determination "justifies a fresh review of this issue by this Court." *See* Pls. Brief at 8; *see also id*. at 6, 12; Pls. Reply Brief at 10; Tr. at 51-52.

The Korean Producers emphasize that, in its Section 123 Determination, "Commerce for the first time . . . interpreted [19 U.S.C. § 1677(35)] to mean one thing with respect to antidumping investigations ([*i.e.*,] that weighted average dumping margins should be calculated without zeroing negative dumping margins), and to mean the exact opposite with respect to antidumping administrative reviews ([*i.e.*,] that weighted average dumping margins should be calculated by zeroing negative dumping margins)." *See* Pls. Brief at 8; *see also id*. at 6, 12, 14-15, 16, 19; Pls. Reply Brief at 4. The Korean Producers seek to make much of the fact that the Court of Appeals

has never squarely "considered the question of whether Commerce's new statutory interpretation – that [19 U.S.C. § 1677(35)] provides for zeroing in administrative reviews but not in investigations – is reasonable within the meaning of step two of <u>Chevron</u>." *See* Pls. Brief at 8; *see also id*. at 12; Pls. Reply Brief at 7, 10; Tr. at 3-4.

According to the Korean Producers, the Court of Appeals' decisions in <u>Timken</u> and <u>Corus Staal I</u> were "expressly premised on the fact that the same statutory provision governed the weight-averaging element of Commerce's dumping margin methodology and that Commerce was applying that provision consistently in both types of proceedings [*i.e.*, in both original antidumping investigations and administrative reviews]." *See* Pls. Reply Brief at 9-10; *see also* Pls. Brief at 8, 12, 16-17, 19; Tr. at 5, 10-11, 45-46, 51-52, 54, 70-72, 85, 88-89. According to the Korean Producers, the Section 123 Determination undermined this alleged foundation of the Court of Appeals' holdings affirming the use of zeroing. *See* Pls. Brief at 12, 17, 19; Pls. Reply Brief at 10; Tr. at 10-11, 47-48, 51-52, 54, 70, 85, 88-89. The Korean Producers contend that a <u>Chevron</u> step two analysis of Commerce's new statutory interpretation is therefore required. *See* Pls. Brief at 8, 12; Pls. Reply Brief at 10; Tr. at 11, 14-15, 51-52, 54, 85. The Korean Producers maintain that "Commerce's interpretation of the identical statutory provision to have two diametrically opposite meanings is unreasonable and directly contrary to the previous holding[s] of the Federal Circuit in <u>Corus I</u> and <u>Timken</u>." *See* Pls. Reply Brief at 4 (citations omitted); *see also id*. at 7, 9-10, 13-14; Pls. Brief at 6, 12, 14, 16-17, 19; Tr. at 5-6, 45-46, 53-54.

In essence, the Korean Producers argue that the Court of Appeals has not yet spoken to the issue of statutory construction presented here – and, moreover, that Commerce's new construction

of 19 U.S.C. § 1677(35) is unreasonable. The threshold question presented by the Korean

Producers' claim is thus whether one or more of the Court of Appeals' decisions on zeroing are

controlling in this case. Only if no such decision is controlling is the requested " fresh review of this

issue" permissible. *See* Pls. Brief at 8; *see also* Pls. Reply Brief at 10 (urging "a fresh <u>Chevron</u> step

two analysis of Commerce's current statutory interpretation").

A recent decision of this court considered – and rejected – the precise arguments that the

Korean Producers press in this case. *See generally* <u>Union Steel</u>, 33 CIT at ____, 645 F. Supp. 2d

at 1305-09.[11] The court in <u>Union Steel</u> relied heavily on <u>Corus Staal II</u>, in which the Court of

Appeals sustained as reasonable Commerce's use of zeroing in an administrative review. *See* <u>Union</u>

<u>Steel</u>, 33 CIT at ____, 645 F. Supp. 2d at 1307-08 (discussing <u>Corus Staal II</u>, 502 F.3d 1370). In

<u>Corus Staal II</u>, the Court of Appeals took specific note of Commerce's Section 123 Determination:

> When Commerce announced the elimination of zeroing in conjunction with the use
> of average-to-average comparisons to calculate dumping margins in antidumping
> investigations, it stated that the new policy did not apply to any other proceedings,
> including administrative reviews. [Section 123 Determination], 71 Fed. Reg. 77772,
> 77772-24 (Dec. 27, 2006). Thus, Commerce's new policy has no bearing on the
> present appeal . . . .

<u>Corus Staal II</u>, 502 F.3d at 1374. The Court of Appeals concluded that, "[t]o the extent recent

developments have changed the current scheme, Commerce has made it clear that those changes do

not apply retroactively to administrative reviews. Thus, our previous determination [in <u>Corus Staal</u>

___

[11]Although not bound by prior decisions of the Court of International Trade, "absent unusual
or exceptional circumstances, . . . judges of this court . . . follow the prior opinions of the court."
*See* <u>Krupp Stahl A.G. v. United States</u>, 15 CIT 169, 173 (1991) (citation and internal quotation
marks omitted); *see also* <u>Mitsui & Co. v. United States</u>, 19 CIT 290, 295, 881 F. Supp. 605, 609
(1995) (*quoting* <u>Krupp Stahl</u>); Tr. at 34. No "unusual or exceptional circumstances" warranting
departure from prior decisions of the court are present here.

I, 395 F.3d at 1349] that Commerce's policy of zeroing is permissible under the statute applies to the challenged administrative review." Corus Staal II, 502 F.3d at 1375.

As Union Steel explained, the Court of Appeals in Corus Staal II "made it amply clear that it did not consider Commerce's decision to discontinue zeroing when performing average-to-average comparisons in antidumping investigations while continuing zeroing in administrative reviews to be a sufficient basis to disturb its precedents, under which it had held zeroing to be permissible in administrative reviews based on the reasonableness of the Department's construction of 19 U.S.C. § 1677(35)." *See* Union Steel, 33 CIT at ____, 645 F. Supp. 2d at 1308. Similarly, here, as in Union Steel, Corus Staal II is controlling on the question presented by the Korean Producers' claim. Thus, here, as in Union Steel, Commerce's construction of 19 U.S.C. § 1677(35) must be sustained as reasonable. The Korean Producers' argument that the Section 123 Determination marked the first time that Commerce has interpreted 19 U.S.C. § 1677(35) "to mean one thing with respect to antidumping investigations . . . and to mean the exact opposite with respect to antidumping administrative reviews" does not suffice to distinguish the Korean Producers' zeroing claim from the Court of Appeals' precedent established in Corus Staal II. *See* Union Steel, 33 CIT at ____, 645 F. Supp. 2d at 1308.

In NSK, another administrative review case, the Court of Appeals took a similar tack, rejecting the argument that it should hold Commerce's use of zeroing unlawful based on a WTO ruling and on official statements signaling the United States' intent to comply with that ruling. *See* NSK, 510 F.3d at 1379-80. The Court of Appeals explained that:

> . . . until Commerce abandons zeroing in administrative reviews such as this one, a remand . . . would be unavailing. Therefore, because Commerce's zeroing practice

is in accordance with our well-established precedent, *until Commerce officially abandons the practice pursuant to the specified statutory scheme*, *we affirm its continued use in this case.*

*Id*. at 1380 (emphasis added).

The Korean Producers maintain that Corus Staal II and NSK are distinguishable from the case at bar because the administrative reviews in those two cases were completed before Commerce's Section 123 Determination was published. *See* Pls. Reply Brief at 7; Tr. at 49-50. But the asserted distinction is illusory. In Corus Staal II, the Court of Appeals expressly ruled that the Section 123 Determination has no bearing on the reasonableness of Commerce's construction of the statute as permitting zeroing in administrative reviews, noting that the Section 123 Determination – by its very terms – does not apply to such proceedings. *See* Corus Staal II, 502 F.3d at 1374-75. Given the breadth of the Court of Appeals' holding in Corus Staal II and the rationale underlying it, the fact that the administrative review at issue here was completed after the issuance and the effective date of the Section 123 Determination is not enough to place this case beyond the ambit of Corus Staal II and NSK.[12]

To much the same effect are the Court of Appeals' recent decisions in Koyo Seiko and SKF, which also involved challenges to the results of an administrative review. *See generally* Koyo Seiko, 551 F.3d at 1290-91; SKF USA Inc. v. United States, 537 F.3d 1373, 1381-82 (Fed. Cir. 2008). In SKF, the Court of Appeals once again sustained Commerce's use of zeroing in

---

[12]The Section 123 Determination was initially scheduled to go into effect on January 16, 2007. However, Commerce later announced a delay in the effective date, to February 22, 2007. *See* Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margins in Antidumping Investigations; Change in Effective Date of Final Modification, 72 Fed. Reg. 3783 (Jan. 26, 2007).

administrative reviews, concluding that there was no argument "not fully resolved by [the Court of Appeals'] established precedent."  *See* SKF, 537 F.3d at 1382 (*citing* Corus Staal II, 502 F.3d at 1374; Corus Staal I, 395 F.3d at 1349; Timken, 354 F.3d at 1342).

Koyo Seiko concerned a challenge to the same determination at issue in SKF, and reached the same result.  *See* Koyo Seiko, 551 F.3d at 1290 (holding SKF "controlling" on Commerce's use of zeroing in administrative reviews).  Koyo Seiko reiterated the Court of Appeals' bottom line in NSK: "Unless and until [Commerce's policy on zeroing is changed 'pursuant to the specified statutory scheme'], [the] court has nothing to review."  *See* Koyo Seiko, 551 F.3d at 1291 (*quoting* NSK, 510 F.3d at 1380).  Accordingly, while the Korean Producers are correct that the Court of Appeals has not squarely confronted the precise arguments that they have framed in this case and in Union Steel, the thrust of the Court of Appeals' jurisprudence is clear:  Commerce's use of zeroing in administrative reviews (or, for that matter, any antidumping proceeding) will be sustained as reasonable – "[u]nless and until" Commerce officially abandons the practice.

Equally unavailing is the Korean Producers' claim that the Court of Appeals' decisions in Timken and Corus Staal I were "expressly premised on the fact that the same statutory provision governed the weight-averaging element of Commerce's dumping margin methodology and that Commerce was applying that provision consistently in both [administrative reviews and original antidumping investigations]."  *See* Pls. Reply Brief at 10; *see also id*. at 9.  The Korean Producers' interpretations of the holdings in Timken and Corus Staal I are simply unduly narrow and cramped when read in the light of Corus Staal II, NSK, and other relevant precedent.

The result in this case not only parallels that in Union Steel, but is also consistent with the outcome in Corus Staal-CIT 2008. *See* Corus Staal-CIT 2008, 32 CIT ____, 593 F. Supp. 2d 1373; *see generally* Tr. at 20-21, 33-34, 43-45, 66 (discussing Corus Staal-CIT 2008). *But see* Tr. at 8-11 (Korean Producers concede that "[t]he zeroing question posed [in Corus Staal-CIT 2008]is basically the same one that [they're] []presenting in this case," and acknowledge that the decision in that case was adverse to them, but assert that the court's analysis did not answer the question which they pose); *see also id*. at 12-15.

Like the case at bar, Corus Staal-CIT 2008 involved a challenge to the final results of an administrative review issued after the Section 123 Determination (and thus Commerce's new statutory interpretation) went into effect. And, like the plaintiffs here, the plaintiff in Corus Staal-CIT 2008 "allege[d] that Federal Circuit decisions upholding the use of zeroing are not binding because Commerce's interpretation of § 1677(35)(A)-(B) – which prohibits zeroing in investigations, but not in administrative reviews – is inconsistent and, therefore, unreasonable" – the very claim that the Korean Producers advance in this case. *See* Corus Staal-CIT 2008, 32 CIT at ____, 593 F. Supp. 2d at 1383. Finding that the great weight of Court of Appeals precedent remains controlling, the Corus Staal-CIT 2008 court held that, notwithstanding Commerce's new interpretation of the statute, no new Chevron analysis is required. *See* Corus Staal-CIT 2008, 32 CIT at ____, 593 F. Supp. 2d at 1383-84.[13] As a result, Corus Staal-CIT 2008 sustained Commerce's

---

[13]Corus Staal-CIT 2008 concluded:

The Federal Circuit has repeatedly found Commerce's use of zeroing in administrative reviews to be reasonable. *See* NSK Ltd. v. United States, 510 F.3d 1375, 1380 (Fed. Cir. 2007) ("'we . . . refuse to overturn Commerce's zeroing

long-standing interpretation of 19 U.S.C. § 1677(35) as permitting zeroing in the context of administrative reviews. *See* Corus Staal-CIT 2008, 32 CIT at ____, 593 F. Supp. 2d at 1383-84. The same result must obtain here.

## IV.  Conclusion

For the reasons set forth above, Plaintiffs' Motion for Judgment on the Agency Record must be denied, and Commerce's Final Results of the Twelfth Administrative Review of the Antidumping Duty Order on Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea, 72 Fed. Reg. 13,086 (Mar. 20, 2007), as amended at 72 Fed. Reg. 20,815 (Apr. 26, 2007), are sustained.

Judgment will enter accordingly.

/s/ Delissa A. Ridgway
_____
Delissa A. Ridgway
Judge

Decided:  February 4, 2010
            New York, New York

---

practice based on any ruling by the WTO or other international body unless and until such ruling has been adopted pursuant to [§ 3533(g)].'" (*quoting* Corus Staal Zeroing, 395 F.3d at 1349)); Corus Staal BV v. United States, 502 F.3d 1370, 1375 (Fed. Cir. 2007) (holding that Commerce's policy of zeroing is reasonable and using Commerce's Issues and Decision Memorandum in the fourth administrative review, at issue in this case, to support its conclusion); Timken Co., 354 F.3d at 1344. *In other words, Commerce's interpretation of § 1677(35)(A)-(B) is reasonable.*

Corus Staal – CIT 2008 , 32 CIT at ____, 593 F. Supp. 2d at 1384 (emphasis added).