## Miller *versus* Warden, Frew & Co.

1. The action of replevin lies for the property of one person in the possession of another, whether the claimant ever had possession or not, and whether his property be absolute or qualified, provided he has the right of possession.

2. The defendant procured a restraining order from the District Court of the United States, and thus restrained the sheriff from replevying the goods claimed, the sheriff made no return to his writ:
*Held, (a)* That the fact that the sheriff was restrained by the defendant from taking the goods was not a bar to the action. *(b)* That the lack of a return by the sheriff did not constitute a defence for the reason that there was a general appearance by the defendant. *(c)* That the action of replevin being not a mere proceeding *in rem*, but also a proceeding *in personam*, the plaintiff in the case was entitled to recover damages to the full value of the property, and also for its detention.

3. An adjudication of bankruptcy and a composition with creditors is not a bar to an action of replevin by one for goods pledged to him by the defendant as security for a loan to another; neither is it a bar to an action by a creditor whose name and amount due him was not contained in the statement of the debtor produced at the meeting in which the resolution effecting the composition was passed.

November 10th, 1885.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 2, of *Allegheny county :*  Of October and November Term, 1885, No. 71.

This was an action of replevin, by Warden, Frew & Co., against Andrew D. Miller to recover 8,000 oil barrels of the value of $10,000, pledged as security by Miller to Warden, Frew & Co. for a loan of $10,000 by them to Waring Bros. The defendant pleaded property, bankruptcy, and the absence of seizure by the sheriff.

On the trial before WHITE, A. L. J., the following facts appeared:

In 1874, Andrew D. Miller was a refiner of oil in Allegheny City. Waring & Bros., of Pittsburgh, having a branch house in Philadelphia as Waring Bros. & Co., were largely engaged in business as commission merchants, and through them, Miller sold most of his refined oil.

In December, 1874, Waring & Bros., whose condition financially at that time was supposed by Miller to be good, represented to Miller that it was desirable for them to have greater bank facilities in the East than they then possessed; and that the First National Bank of Philadelphia had consented to a loan of $30,000, upon security, if the firm made that bank

their depository.    They asked Miller, who had in his yards about 40,000 oil barrels, if he would, as accommodation, pledge 24,000 oil barrels to secure the bank in the proposed loan to them of the $30,000.    To this Miller agreed, and to show his' willingness to the bank in Philadelphia, on the 28th of December, gave the following memorandum to Warings:

"PITTSBURGH, December 28th, 1874.

"Bought of A. D. Miller:

"To 24,000 new oil barrels, at $1.25, $30,000.    Said barrels are in yard and sheds at A. D. Miller's Oil Works, corner of Washington and Preble avenues, Sixth Ward, Allegheny City, Pa.                   "Received payment.

"A. D. MILLER."

On December 29th, O. T. Waring, of the firm of Waring Bros., and Waring Bros. & Co., called on Mr. Philler, president of the First National Bank of Philadelphia, with this bill of sale, for the purpose of securing $10,000, actually needed on that day.    Mr. Philler declined to make the loan on account of the form of the paper.    He wanted a collateral note and a warehouse receipt.    He also gave Waring to understand that he did not want to make any negotiations with him, unless through Warden, Frew & Co., it being understood that the latter firm was to be guarantor of the notes.    On the evening of the same day, O. T. Waring, returned the bill of sale to his firm in Pittsburgh, having first, however, filled the blank therein with the name of Warden, Frew & Co.

On December 30th, O. T. Waring came to Warden, of the firm of Warden, Frew & Co., stating that his firm could not get word from Pittsburgh, and that they must have $10,000. Warden, Frew & Co., gave them a loan of $10,000 on the 30th of December, Waring agreeing to hold the said papers and deliver them to Warden, Frew & Co.

On the 31st of December, Waring & Bros., at Pittsburgh, received the information from Philadelphia, that Warden, Frew & Co., had advanced them their $10,000 upon the barrels, and that the invoice had been returned with instructions to procure a warehouse receipt and send it and to turn the barrels over to Lockhart, a member of the firm of Warden, Frew & Co.

On the 4th of January, 1875, about two or three o'clock in the afternoon, three bills of sale and three warehouse receipts were drawn up and signed by Miller.    The bills of sale were post-dated December 28th, 1874, and the warehouse receipts were post-dated January 2d, 1875.    A copy of each is as follows:

"PITTSBURGH, December 28th, 1874.

" First National Bank of Philadelphia,

" Bought of A. D. Miller:

" Eight thousand (8,000) oil barrels, at $1.25, $10,000. Said barrels are in yard and sheds at A. D. Miller's Oil Works, corner of Washington and Preble avenues, Sixth Ward, Allegheny City, Pa.

" Received payment,

" A. D. MILLER."

" PITTSBURGH, January 2d, 1875.

" Received from Charles Lockhart, for the First National Bank of Philadelphia, eight thousand (8,000) oil barrels, now* stored in the yard and sheds at the Miller Oil Works, corner of Washington and Preble avenues, Allegheny City, Pa., the same to be stored without charge, subject to the order of said First National Bank of Philadelphia.

" A. D. MILLER."

About an hour after signing these papers, and while they were still in the hands of Lockhart, Warings went to protest in Philadelphia. Miller, upon hearing the fact, immediately notified Lockhart, and his partner, Frew, not to forward the papers, and to advise the bank to make no advances. Frew, then a member of Warden, Frew & Co., immediately sent the following dispatch to W. G. Warden:

"We understand Waring Bros. suspended; Miller just here; wants us to notify you and the bank not to advance anything on the barrels; shall we send the papers? Of course you must advance nothing."

The bank declined to make the loan and the transaction fell through. Some time afterwards, about sixty days afterwards, W. G. Warden, one of the defendants, procured Mr. Philler, the president of the bank, to indorse one of the bills of sale and warehouse receipts to Warden, Frew & Co. Mr. Philler testifies that these papers had not in the meantime been in his possession.

The protest of Waring Bros. was followed by their suspension and bankruptcy, and with them they took Miller, the plaintiff in error. He became an adjudicated bankrupt on the 11th of February, 1875, returning in his schedules all these barrels as his assets.

[*NOTE.—The word "now" in the second line of the above is written in the original over the words "to be," which are erased.]

Subsequently he secured a composition with his creditors, which was approved by the Court and ordered to be filed.

On the 22d of April, 1875, a writ of replevin was issued at the instance of Warden, Frew & Co., to replevin 8,000 barrels of the value of $1.25 each, to which Miller entered his appearance, and on the same day a declaration was filed that the defendant took and unjustly detained these barrels. Application was made to the District Court of the United States for an injunction to restrain the replevy, and a restraining order was issued, of which the attorney of Warden, Frew & Co. took notice; and the result was that there was no replevy of the barrels and no return of the writ was ever made by the sheriff. Testimony on the injunction proceedings was taken and the matter was allowed to linger until March 18th, 1882, when the Court dissolved the restraining order of 1875.

The defendant presented *inter alia* the following points:

1st. That plaintiffs, under the evidence in this case, have failed to disclose any right in themselves to immediate and exclusive possession of the 8,000 barrels in controversy, under which this suit in replevin can be maintained.

Refused. (First assignment of error.)

2d. That if the jury believe that the bill of sale, of which the letter-press (Ex. 3) is a copy, was unaccompanied by a warehouse receipt at the time of the loan of $10,000, on December 30th, 1874, then if the jury should believe that said loan was made on the strength of said barrels, the plaintiffs would have no right to maintain this action.

Refused. (Second assignment of error.)

4th. If the jury believe from the evidence, that Mr. Warden had arranged, prior to December 30th, 1874, for a loan to be made by the First National Bank of Philadelphia, to Waring Bros. & Co., of $30,000, on 24,000 oil barrels, and that the papers had been transmitted to Pittsburgh, for the purpose of substituting the First National Bank of Philadelphia, in the bill of sale, and to secure warehouse receipts to perfect the collateral for said bank, then the plaintiffs had no title or right of possession of said barrels in themselves at the time said loan was made.

The evidence does not sustain the point. It is refused. (Third assignment of error.)

5th. Plaintiffs have no right to claim protection through these barrels, they not having advanced the whole sum of $30,000 for which the collateral was intended by Capt. Miller to be applied.

Refused. (Fourth assignment of error.)

6th. That the bank, at the time indorsement of warehouse receipt was made, had no title which they could pass

[Miller *v.* Warden, Frew & Co.]

by said indorsement, and that plaintiffs knew that fact, and are therefore not innocent holders for value, and therefore can not recover in this action, by reason of such indorsement.

Refused under the evidence.    (Fifth assignment of error.)

. 7th. That the sheriff, never having replevied said barrels, nor made return of the said writ of replevin, the said writ is dead and this action cannot be maintained.

Refused.    (Sixth assignment of error.)

8th. That the remedy for plaintiffs at time this writ was sued was exclusively in the United States District Court, for Western Pennsylvania.    That the barrels in dispute were at the time in the possession of that Court, and that the composition did not operate to perfect that writ, or to change the jurisdiction of that Court.

Refused.    (Seventh assignment of error.)

9th. That at the time the loan of $10,000 was made, the barrels called for by the warehouse receipt had not been separated from other barrels, the property of said defendant, and so individuated that a writ of replevin could have been issued at that time.

Refused.    (Eighth assignment of error.)

In the general charge the Court instructed the jury *inter alia* as follows:

According to the testimony of Warden and O. T. Waring, he, (Waring,) was to hold that bill of sale and they were to have it put into proper shape.    It is immaterial whether Warden, Frew & Co. held that original bill of sale, or not.    If it was in the possession of Waring Bros. at the request and instance of Warden, Frew & Co., and they were to retain it, then, as far as this case is concerned, it was legally in the possession of Warden, Frew & Co., because in the possession of their agent.    [It was then, at the time plaintiffs advanced this money, in the possession of Waring Bros., who were to use it for this very purpose, and who had an undoubted right on the 30th of December, to so use it, whether in Philadelphia or Pittsburgh, *and if they did use it for that purpose,* and the money was advanced on that, then I say to you that Warden, Frew & Co. were entitled to that bill of sale and to the *whole of the oil barrels* mentioned in it as collateral security for the $10,000 advanced.]    (Ninth assignment of error.) . . . . .

[Now, the question for you to pass upon is this:    Did the plaintiffs advance ten thousand dollars on the faith of that bill of sale for 24,000 oil barrels, and did they, at the time they loaned that money to Waring Bros., rely upon that as their protection and security, and was it pledged to them at that time for such security?    If that was the case it gave them a legal title to the oil barrels and they would be entitled to hold

them until they got the amount advanced from somebody; and I instruct you that if you find the facts as I have stated them, then your verdict should be for plaintiff.]

(Now, on that point, what is the evidence? You have the testimony of O. T. Waring and of Mr. Warden as to the negotiations in Philadelphia. Do you believe these witnesses? Is there anything in the evidence to show that they have not told the truth?) [Of course you will consider all the evidence bearing upon the subject, and if you are satisfied *from it what they said is true, then your verdict ought to be for the plaintiff.*] (Tenth assignment of error.)

Verdict for the plaintiff for $16,050, and judgment thereon; whereupon the defendant took this writ assigning for error the answer to his points and those portions of the general charge included within brackets.

*S. Schoyer, Jr.,* (*W. R. Errett* with him) for plaintiff in error. —In order to recover in replevin plaintiffs must show either a general or special property in themselves, with right to immediate possession: Wells on Replevin, §§ 39, 96; Lake Shore *v.* Ellersley, 85 Pa. St., 283.

The barrels were not individuated; there was no warehouse receipt. As vendor, Miller had the goods in his possession and retained his rights in the absence of an agreement to hold them in a new character: Blackburn on Sales, § 225.

There was no delivery of these barrels to Warden, Frew & Co. by virtue of this original memorandum.

Had a fire occurred in Miller's yard on December 30th, 1874, the day of Warden's loan, and the barrels had been destroyed, whose loss? Certainly not Warden, Frew & Co.'s. There had been no delivery: Sneathen *v.* Grubbs, 6 W. N. C., 342; Bigley *v.* Risher, 13 P. F. S., 154.

Admitting the question in the restricted form, admitted the obligation of Warden, Frew & Co. to protect us as far as they could by collecting money from the principal debtor. Waring Bros. owed them the debt; Miller was but their surety, as plaintiffs below well knew. Then, if by pressing their claim in composition they could have secured the amount offered, our burden would have been to that extent released.

"When a creditor has means of paying his debt in his hands, and does not use it, the surety is discharged as far as security surrendered would have reached to pay: Everly *v.* Rice, 8 H., 297; Richards *v.* Com., 4 Wr., 146; Neff's Appeal, 9 W. & S., 43.

The Court below should not have proceeded with the trial without a return by the sheriff.

1 AMERMAN—20

No declaration can properly be plead until return is made: Fisher *v.* Whooley, 1 Casey, 198 ; Wells on Replevin, 466, 468.

Judgment follows the return.     How is judgment to be given ?

But it may be said that the appearance of original counsel cured the defect.

" The action is a mixed writ, partly *in rem* and partly *in personam.*"

The summons to defendant is accessory and subordinate: Baldwin *v.* Cash, 7 W. & S., 426.

*John Dalzell,* for defendant in error.—" In Pennsylvania replevin lies for the property of one in the possession of another, whether the claimant ever had possession or not, and whether his property be absolute or qualified, provided he has the right of possession " : Marlan *v.* Marlan, 15 Pa. St., 507.

" Whether the plaintiff had acquired the absolute ownership or not, he had by the bailment, a qualified property, which was sufficient to enable him to maintain the action, and the direction ought to have been that he was entitled to recover " : Mead *v.* Kilday, 2 Watts, 110, 111 ; Young *v.* Kimball, 23 Pa. St., 195 ; Shearick *v.* Huber, 6 Binn, 3 ; Woods *v.* Nixon, Addis., 134 ; Stoughton *v.* Rappalo, 3 Serg. and Rawle, 559.

The lack of a return by the sheriff constituted no defence to the action.

" A general appearance by the defendant waives the summons and service of the writ " :   Zion Church *v.* St. Peter's Church, 5 W. & S., 215 ; 1 Tr. & Haly, 272 ; Hall *v.* Law, 2 W. & S., 121 ; Mosher *v.* Small, 5 Barr, 221 ; Hatch *v.* Stitt, 66 Pa. St., 264.

Certainly no argument is needed to show, that Warden, Frew & Co, could not have paid themselves a debt due by Waring Bros. & Co. by the retention of money belonging to an individual member of the firm.   To the latter's claim, they could not plead his firm's debt as a set-off: McDowell *v.* Tyson, 14 S. and R., 300 ; Watson *v.* Hensel, 7 W., 344.

The fact that Miller had been in bankruptcy, and had effected a composition, was no bar to this action.

The plaintiffs were not creditors of Miller.   It is not pretended that their names appeared in his schedules.   They had no notice of his proceeding, nor were they in any manner, shape or form, parties to it.

Had they been creditors, in the absence of notice, their rights would have been unaffected by the composition proceeding.   The addendum to the 43d section of the Act of 1867 (Bankrupt Act) provides only, that the provisions of the composition " shall be binding on all the *creditors,* whose

names and addresses and the amounts of the debts due to whom, are shown in the statement of the debtor produced at the meeting at which the resolution shall have been passed, *and shall not affect or prejudice the rights of any other creditors.*"

Mr. Justice PAXSON delivered the opinion of the court, January 4th, 1886.

It would consume much time to little purpose to discuss *seriatim* the numerous assignments of error in this case. A few of the principles involved will be briefly considered.

It was alleged and pressed with much earnestness here that by the arrangement between the defendant below (plaintiff in error) and Waring Bros., an entire loan of $30,000 was contemplated; that the whole of that sum was necessary to relieve Waring Bros. from their financial difficulties, and that the defendant gave them the bill of sale for the 24,000 oil barrels for that purpose and no other.

If such was their purpose and understanding, it was not communicated to Warden, Frew & Co., plaintiffs below, who advanced Waring Bros. the sum of $10,000 upon the faith of the pledge of 8,000 of said barrels. Moreover, the fact that the original bill of sale of 24,000 barrels was changed into three bills of sale of 8,000 barrels each is persuasive evidence that the intention was that the money should be borrowed thereon in such amount and from such persons as it could be procured from. The object of the proceeding was to enable Waring Bros. to raise money to meet their necessities, and the defendant was willing and did transfer his barrels to them for that purpose. We think it clear that the plaintiffs advanced their money on the faith of the bill of sale. It was so testified to by several witnesses, and they are not essentially contradicted. The fact that the advance was made pending other negotiations to raise the whole sum is not material. The plaintiffs may have expected to be re-imbursed out of the fruits of such negotiations, but this in no way affects their advance of the $10,000. The most that can be made of it is that they advanced for a temporary purpose a part of the sum pending negotiations for the whole. The negotiation with the bank never proceeded so far as a loan; pending said negotiation Waring Bros. failed and the whole matter fell through. This part of the defence goes to the merits; what remains is technical.

It was contended that the sheriff never having replevied the said barrels, nor made return to the writ of replevin, the said writ is dead and this suit cannot be maintained.

The lack of a return by the sheriff constitutes no defence for the reason that there was a general appearance by the

[Miller *v.* Warden, Frew & Co.]

defendant. Such appearance waives the service of the writ: Zion Church *v.* St. Peter's Church, 5 W. & S., 215; Hall *v.* Law, 2 Id., 121; Hatch *v.* Stitt, 16 P. F. S.. 264; Mosher *v.* Small, 5 Barr, 221, and see 1 Troubat & Haly, 272.

The action of replevin lies in Pennsylvania for the property of one person in the possession of another, whether the claimant ever had possession or not, and whether his property be absolute or qualified, provided he has the right of possession: Harlan *v.* Harlan, 3 Harris, 507; see also Mead *v.* Kilday, 2 Watts, 110; Young *v.* Kimball, 11 Harris, 195. In this case the plaintiff showed title and property in the barrels, and the fact that the sheriff was prevented from taking them is no bar to the maintenance of the action. The defendants by their own act procured the restraining order from the District Court and thus prevented the sheriff from seizing the barrels. In such case the plaintiff is entitled under the authorities to recover damages to the full value of the property, as also for its detention: Bower *v.* Tallman, 5 W. & S., 556. The writ of replevin in Pennsylvania is not a mere proceeding *in rem*, but it is a proceeding also against the defendant in the writ personally, and the practice is to insert in the writ a claim of summons for the defendant to appear: Weaver *v.* Lawrence, 1 Dallas, 157; Shearick *v.* Huber, 6 Binn., 3; Stoughton *v.* Rappalo, 3 S. & R., 559.

It was further contended that at the time the $10,000 loan was made the barrels called for by the warehouse receipt had not been separated from the 24,000 barrels of the defendant of which they formed a part, and so individuated that a writ of replevin could have been issued at that time.

The defendants below went to trial upon three pleas, viz.: (1) property; (2) bankruptcy, and (3) the absence of a seizure by the sheriff. In no one of them is there an averment that the 8,000 barrels were not individuated, or were a part of a larger lot. On the contrary, the pleas admit the identity of the barrels described in the writ. The pleas refer to "*the said oil barrels in the declaration* mentioned," and claim that they are the property of the defendant, or that the sheriff had not taken the *said* 8,000 barrels, &c., &c. We need not elaborate this point; it is too plain.

The fact that Miller, the defendant, had been adjudicated a bankrupt, and had effected a composition, is no bar to the action. The plaintiff had no notice of the proceedings in bankruptcy. The bankrupt law (Act of 1867) provides only that the provisions of the composition "shall be binding on all the creditors, whose names and addresses, and the amounts of the debts due to whom, are shown in the statement of the debtor produced at the meeting in which the resolution shall

have been passed, and shall not affect or prejudice the rights of any other creditors." Aside from this the plaintiffs were not creditors of the defendant, and their names do not appear in his schedules. Further, the Court which it is now claimed has exclusive jurisdiction over this controversy has declared that it had no jurisdiction. The restraining order was dissolved upon that very ground. That judgment has never been reversed, and until it is it is binding upon the parties, even if erroneous. This is so in the case of the judgment of a Justice of the Peace: Kass v. Best, 3 Harris, 101.

• The foregoing covers so much of the assignments of error as we think require discussion. We find nothing in this record to justify us in reversing the judgment, and it is therefore

Affirmed.