**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1699
_____

LUDIMILLA RAMOS DA SILVA
a/k/a Lulu Da Silva
a/k/a Ludimilla Dasilva,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A208-332-187)
Immigration Judge: John B. Carle

Argued on July 9, 2019
Before:  MCKEE, ROTH and RENDELL, <u>Circuit Judges</u>

(Opinion filed:  January 24, 2020)

Thomas M. Griffin        (**Argued**)
Surin & Griffin
718 Arch Street
Suite 701N
Philadelphia, PA 19106

        Counsel for Petitioner

Scott G. Stewart        (**Argued**)
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Stefanie A. Svoren-Jay
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

        Counsel for Respondent

O P I N I O N

**ROTH**, <u>Circuit Judge</u>:

Appellant Ludimilla Ramos Da Silva petitions for review of her final order of removal. She contends that the Board of Immigration Appeals erred when it concluded that her convictions for assaulting her husband's mistress were not

"connected to" the extreme cruelty she suffered, rendering her ineligible for cancellation of removal.  We agree.  For the reasons that follow, we will grant Da Silva's petition for review and vacate the BIA's removal order.

## I

Da Silva, a native of Brazil, was admitted to the United States in 1994 with a B-2 visa; she was then about two years old.  She overstayed her visa and has never left the United States.  Da Silva married a United States citizen, Aziim Leach, on April 30, 2012.  Leach, a member of the armed services, subjected Da Silva to emotional, psychological, and physical abuse throughout their marriage.  For instance, he refused to file immigration paperwork that would provide her with documented status and used her undocumented status as a method to control her.  Leach also hit Da Silva's daughter and pushed Da Silva against a wall multiple times.[1]

Most importantly to this appeal, Leach engaged in numerous extramarital affairs, including one particularly intense relationship with his coworker, L.N.  On September 1, 2014, Da Silva discovered sexually explicit text messages

---

[1] Da Silva has been subjected to abuse throughout her life.  She was raised by a single mother, who inflicted physical and emotional harm upon her children until she abandoned Da Silva and her siblings.  When she was fifteen, she was raped at a friend's house.  She met and married her first husband at age eighteen and he, like Leach, was physically and emotionally abusive.  Following her first divorce, Da Silva began seeing a mental health counselor, who diagnosed her with post-traumatic stress disorder.

between Leach and L.N. Da Silva questioned Leach about the messages and called L.N. to arrange a meeting at L.N.'s house so they could talk. When Da Silva arrived, L.N. got into Da Silva's car, and Da Silva confronted L.N. with the text messages. Da Silva claimed she feared that L.N. was about to hit her so she punched L.N. in the nose.

Next, L.N. proposed that they go to Da Silva's house, so they could talk with Leach. When they arrived, L.N. and Leach claimed the affair was over. Da Silva and L.N. then left to return to L.N.'s house but stopped at Da Silva's friend's house on the way, where there was a second confrontation regarding the affair. Da Silva testified that L.N. said Leach was still her "daddy," indicating that L.N. would continue the extramarital affair.[2] In response, Da Silva "exploded" and, in "a blind rage," struck L.N. in the nose again.[3] The IJ recognized that Da Silva had "been provoked by a woman who was [having] an affair with her husband," and the BIA noted her violent outburst was "an aberration."[4] Da Silva was arrested the following morning.

On January 19, 2016, Da Silva pleaded guilty to two counts of assault in violation of 18 U.S.C. § 113(a)(4) and was sentenced to eighteen months' imprisonment.[5] On July 31, 2017, the government served Da Silva with a Notice to Appear, charging her with removability for overstaying her visa

---

[2] A.R. 90, 190.
[3] A.R. 94, 495.
[4] A.R. 94, 4.
[5] Because the events at issue occurred at Fort Knox military base, a federal enclave in Kentucky, Da Silva was under federal jurisdiction.

pursuant to 8 U.S.C. § 1227(a)(1)(B). She sought cancellation of removal for battered spouses under the Violence Against Women Act (VAWA),[6] but was denied relief by both the Immigration Judge and the BIA.

Petitioners are eligible for VAWA cancellation under 8 U.S.C. § 1229b(b)(2)(A) if (1) they have been "battered or subjected to extreme cruelty" by a spouse who is a United States citizen, (2) they have been "physically present in the United States for a continuous period of not less than [three] years immediately preceding the date of such application," (3) they have been "a person of good moral character" during the past three years, and (4) "the removal would result in extreme hardship to the alien, the alien's child, or the alien's parent."[7] Da Silva concedes that she cannot satisfy the "good moral character" requirement because, as a result of her assault conviction, she was "confined . . . to a penal institution for an aggregate period of one hundred and eighty days or more."[8] However, she argues that she qualifies for the exception to the good moral character requirement, which provides that a petitioner is still eligible for VAWA cancellation if the "act or conviction was *connected to* the alien's having been battered or subjected to extreme cruelty" and cancellation is otherwise warranted.[9]

The IJ held that Da Silva's assault convictions were not "connected to" her husband's cruelty because she was not

---

[6] 8 U.S.C. § 1229b(b)(2)(A).
[7] *Id.*
[8] 8 U.S.C. § 1101(f)(7).
[9] 8 U.S.C. § 1229b(b)(2)(C) (emphasis added).

"encouraged or induced" by him to commit the assault.[10] Rather, they were "connected to her having been provoked by a woman who was carrying on an affair with her husband" and were "a result of her anger toward her husband's infidelity and anger toward the mistress' behavior."[11] The IJ also concluded that she qualified for all other elements of VAWA cancellation. Specifically, the IJ found that Leach subjected her to extreme cruelty because he threatened to take away her children due to her undocumented status, was consistently unfaithful, verbally and physically abused her and her daughter, and refused to allow her to petition for immigration status. The I.J. also found that her removal would result in extreme hardship.

Da Silva appealed to the BIA, and the government filed for summary affirmance of the IJ's decision. In a nonprecedential opinion, the BIA affirmed the IJ's decision, agreeing that, although she had been subjected to extreme cruelty, the assault convictions were not "connected to" the cruelty. The BIA reasoned that Leach did not "ask, encourage, compel, or coerce" her to commit the assault and that she "did not commit the assault on behalf of or for her husband."[12] Da Silva timely appeals, arguing that she is eligible for cancellation of removal because her convictions are "connected to" the cruelty. The government has filed a motion to remand to the BIA so that it may conduct a more thorough analysis of the term "connected to." In the alternative, the government asks that we deny the petition, arguing that the BIA properly interpreted and applied "connected to."

---

[10] A.R. 94.
[11] A.R. 94.
[12] A.R. 4.

## II

We have jurisdiction under 8 U.S.C. § 1252(a). Where, as here, the BIA expressly adopts portions of the IJ's decision, we review both the BIA and IJ decisions.[13] We review findings of fact "under the deferential substantial evidence standard,"[14] and we review legal conclusions de novo, subject to established rules of deference.[15] The BIA's decision is not entitled to *Chevron* deference because it is nonprecedential.[16]

## III

Our analysis proceeds in two parts. First, we address the government's motion to remand to the BIA and conclude that remand is not appropriate here. Next, we apply our principles of statutory interpretation to the term "connected to." We hold that the term has a clear and unambiguous meaning and that the BIA's construction of "connected to" was overly narrow and contrary to the plain language of the statute.

### A. The Motion to Remand to the BIA is Denied.

The government urges us to remand to the BIA so that it may re-interpret the term "connected to." The government does not concede that the BIA's construction of the term was improper but rather argues that remand is warranted to permit

---

[13] *Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004).

[14] *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001).

[15] *Borges v. Gonzales*, 402 F.3d 398, 404 (3d Cir. 2005).

[16] *See Mahn v. Att'y Gen.*, 767 F.3d 170, 173 (3d Cir. 2014).

the BIA an opportunity to fully consider the "ambiguous" phrase "connected to."  We decline the government's invitation to remand because the factors supporting remand are not present here.  Indeed, we conclude that the phrase "connected to" is unambiguous, leaving no statutory gaps for the BIA to fill.

Remand is appropriate where an agency has yet to consider the issue presented to the court.  For instance, in *I.N.S. v. Orlando Ventura*, [17] the Supreme Court held that the Ninth Circuit "committed clear error" when it decided a question itself in the first instance rather than remanding to the BIA.[18]  Remand is also called for where there has been a change in law or an intervening event.[19]  Neither factor is present in this case.

---

[17] 537 U.S. 12 (2002).

[18] *Id.* at 17; *see also*, *Gonzales v. Thomas*, 547 U.S. 183, 186 (2006) (where the "matter requires determining the facts and deciding whether the facts as found fall within a statutory term," the BIA, not a court of appeals, should make the initial determination); *Okeke v. Gonzales*, 407 F.3d 585, 595 n.14 (3d Cir. 2005) ("We thus may not raise the issue [of whether the petitioner was convicted of a controlled substance offense] *sua sponte* and decide it *de novo*.  Rather, we must remand so that the BIA may have the first opportunity to address the issue.").

[19] *See, e.g.*, *Leia v. Ashcroft*, 393 F.3d 427, 438-39 (3d Cir. 2005) (remanding for reconsideration in light of a released opinion that had not been available to either the IJ or BIA at the time of their respective decisions); *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001) ("[T]he agency may seek a remand because of intervening events outside of the agency's control, for example, a new legal decision or the passage of new legislation.").

The BIA has already interpreted and applied the term "connected to," and thus, we would not be conducting a de novo inquiry as in *Ventura* and its progeny. Moreover, there has been no change in law or intervening event that would affect the BIA's analysis. The government asked the BIA to summarily affirm the IJ's decision. If it wanted the BIA to conduct a re-analysis of "connected to," it should have asked the BIA to do so the first time around.[20]

We might be more inclined to remand if the BIA's subsequent, precedential interpretation of "connected to" would receive *Chevron* deference.[21] But it would not. Under *Chevron* step one, we determine "if the statute is silent or ambiguous with respect to the specific issue of law in the case."[22] If the statute is unambiguous, there are no statutory

---

[20] We have denied requests to remand to the BIA under similar circumstances. *See Ildefonso-Candelario v. Att'y Gen.*, 866 F.3d 102, 106-07 (3d Cir. 2017) (refusing request for a remand to the BIA because there was no "emerging case law" that justified "giving the BIA a second bite at the apple" when it committed error on the first try); *Borrome v. Att'y Gen.*, 687 F.3d 150, 156 n.4 (3d Cir. 2012) (rejecting a request for a remand to the BIA when the government asked for a summary affirmance but then changed its "tune" and gave "no good reason why the BIA should have a second chance to consider the issues" when, at the "[g]overnment's insistence, [it] chose not to do so" the first time).

[21] *See SKF USA Inc.*, 254 F.3d at 1029-30 (where courts defer to agency constructions of ambiguous statutes under *Chevron* "we believe a remand to the agency is required, absent the most unusual circumstances verging on bad faith").

[22] *Lin–Zheng v. Att'y Gen.*, 557 F.3d 147, 155 (3d Cir.

gaps for the agency to fill, and our inquiry ends.[23]  Only where the statute is ambiguous do we move to step two and determine if the agency's interpretation of the statute is reasonable and thus entitled to deference.[24]

As a threshold matter, we are not convinced that the *Chevron* framework applies here because interpreting "connected to" does not implicate the BIA's "expertise in a meaningful way,"[25]  Rather it appears to be "a pure question of statutory construction for the courts to decide."[26]  Even if the *Chevron* framework did apply, "connected to" is unambiguous as discussed below and therefore, the meaning of "connected to" is resolved under the first step of *Chevron*.

---

2009) (en banc) (internal quotation and citation omitted).

[23] *Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

[24] *Id.*

[25] *Sandoval v. Reno*, 166 F.3d 225, 239 (3d Cir. 1999).

[26] *INS v. Cardoza–Fonseca*, 480 U.S. 421, 446 (1987).  The term "connected to" sounds in causality and does not implicate the BIA's expertise in immigration law.  The courts are better positioned than the BIA to construe statutory language related to causation.  *See Singh v. Ashcroft*, 383 F.3d 144, 151 (3d Cir. 2004) (declining to defer to the BIA's interpretation of "aggravated felon" under 8 U.S.C. § 1101(a)(43) because the "interpretation and exposition of criminal law is a task outside the BIA's sphere of special competence"); *Sandoval*, 166 F.3d at 239 (explaining that the BIA's decision as to the effective date of a statute does not receive *Chevron* deference because the issue "is not one that implicates agency expertise in a meaningful way").

Accordingly, we will deny the government's motion to remand to the BIA to re-interpret "connected to."

### B. "Connected to" is Unambiguous, and the BIA's Construction of the Term is at Odds With its Unambiguous Meaning.

We employ well-established principles of statutory interpretation to determine the meaning of "connected to," first asking whether the term has a plain and unambiguous meaning.[27] If the statutory language is unambiguous, our inquiry ends because courts must presume that Congress "says in a statute what it means and means in a statute what it says there."[28] In determining whether language is unambiguous, we "read the statute in its ordinary and natural sense."[29]

To ascertain the ordinary meaning of words, "[w]e refer to standard reference works such as legal and general dictionaries."[30] Dictionaries define the word "connected" similarly. Miriam-Webster defines it as "having the parts or elements logically linked together;"[31] the Oxford English

---

[27] *Dobrek v. Phelan*, 419 F.3d 259, 263 (3d Cir. 2005).

[28] *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)).

[29] *Harvard Secured Creditors Liquidation Trust v. I.R.S.*, 568 F.3d 444, 451 (3d Cir. 2009) (citations omitted).

[30] *United States v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008) (using dictionary definitions of "persecution" to hold that the term is unambiguous).

[31] *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/connected (last visited July 26, 2019).

Dictionary defines it as "related, associated (in idea or nature);"[32] and Black's Law Dictionary defines it as "to associate as in occurrence or in idea."[33] Together, these definitions indicate that the term "connected to" means "having a causal or logical relationship."[34]

The government argues that the plain meaning of "connected to" is too broad to be unambiguous; however, "a term in a statute is not ambiguous merely because it is broad in scope."[35] Application of the plain, expansive meaning of "connected to" is called for as long as it is supported by the "broader context of the statute as a whole,"[36] and, indeed, the statutory context does support such application. Two other VAWA-based provisions in the INA are instructive because Congress expressly limited the broad scope of "connection" in

---

[32] *Oxford English Online Dictionary*, https://www.oed.com/view/Entry/39329?rskey=nSSxs9&result=2&isAdvanced=false#eid (last visited July 26, 2019).

[33] *Black's Law Dictionary* 302 (6th ed. 1990).

[34] We came to a similar conclusion in *United States v. Loney*. In that case, we held that the phrase "in connection with" had a plain and ordinary meaning and "expresse[d] some relationship or association, one that can be satisfied in a number of ways such *as a causal or logical relation or other type of relationship*." 219 F.3d 281, 283-84 (3d Cir. 2000) (emphasis added).

[35] *In re Phila. Newspapers, LLC*, 599 F.3d at 310; *see also Diamond v. Chakrabarty*, 447 U.S. 303, 315 (1980) ("Broad general language is not necessarily ambiguous when congressional objectives require broad terms.").

[36] *Contreras Aybar v. Sec'y U.S. Dep't of Homeland Sec.*, 916 F.3d 270, 273 (3d Cir. 2019).

those provisions. Under the first statute, battered spouses are exempt from a certain ground of inadmissibility if they can show, inter alia, that "there was a *substantial connection* between the battery or cruelty . . . and the alien's unlawful entry into the United States."[37] A second statute, which applies to VAWA self-petitioners who are divorced from their abusive spouses, requires petitioners to demonstrate "a *connection* between the legal termination of the marriage *within the past 2 years* and battering or extreme cruelty."[38] Both of these provisions reveal that Congress knew how to narrow the otherwise expansive term "connection"—either by including a modifier like "substantial" or a temporal requirement—but chose not to for VAWA cancellation of removal.

The government also cites the interpretive principle that statutory exceptions should be read narrowly so as not to "swallow" the general rule.[39] Retaining the plain meaning of "connected to" in the exception to the good moral character requirement does not swallow the cancellation of removal statute; rather, it aligns with its purpose. VAWA cancellation of removal is "intended to ameliorate the impact of harsh provisions of immigration law on abused women."[40] A narrow

---

[37] 8 U.S.C. § 1182(a)(6)(A)(ii)(III) (emphasis added).

[38] 8 U.S.C. § 1154(a)(1)(A)(iii)(II)(aa)(CC)(ccc) (emphasis added).

[39] *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487, 504 n.2 (1999); *see also Comm'r v. Clark*, 489 U.S. 726, 739 (1989) ("[When] a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision.").

[40] *Hernandez v. Ashcroft*, 345 F.3d 824, 840 (9th Cir. 2003) (in

13

construction, like the one the BIA adopted here, would frustrate this statute's larger goal by limiting the exception to those who committed crimes at the direction of their abuser. There are other reasons for which an abused spouse might commit acts that, absent the abuse, would indicate bad character. We do not need to develop that list in connection with this case, but at the same time we should not limit the applicability of the exception in a way that is contrary to the intent of the statute.

As the government notes, there are Supreme Court cases stating that the phrase "in connection with" is so broad that it is indeterminate; however, these cases do not compel the same holding here. In those cases, the application of "in connection with" conflicted with the purpose of the statutes at issue. For instance, in *Maracich v. Spears*,[41] the Court addressed a statute that prohibited the Departments of Motor Vehicles from disclosing personal information except, inter alia, where the information is used "in connection with" judicial and administrative proceedings.[42] The Court held that because the plain meaning of "in connection with" is so broad, a plain meaning interpretation would undercut the purpose of the statute—namely protecting privacy rights.[43] Similarly, in *New*

---

the context of interpreting "extreme cruelty").

[41] 570 U.S. 48 (2013).

[42] *Id.* at 52.

[43] *Id.* at 59 ("[In connection with], in literal terms, could be interpreted to its broadest reach to include the personal information that respondents obtained here. But if no limits are placed on the text of the exception, then all uses of personal information with a remote relation to litigation would be exempt under [this provision].").

*York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*,[44] the Court held that applying the plain and ordinary meaning of "in connection with" or "related to" would not comport with the objectives of the Employee Retirement Income Security Act.[45] Da Silva's case is distinguishable because, as discussed, a plain meaning application of "connected to" furthers, not undercuts, the objectives of the VAWA cancellation statute.

Lastly, the government cites a U.S. Citizenship and Immigration Services interoffice memorandum that addresses the meaning of "connected to." This memo does not affect our analysis. The memo first defines "connected to" as compulsion or coercion, but then conflates "connected to" with but-for causation.[46] As an initial matter, this memo's

---

[44] 514 U.S. 645 (1995).

[45] *Id.* at 656 ("We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."); *see also Mellouli v. Lynch*, 135 S. Ct. 1980, 1990 (2015) (narrowing the plain meaning of "related to" in an immigration statute because a "sweeping interpretation departs so sharply from the statute's text and history that it cannot be considered a permissible reading").

[46] Specifically, the memo says that in order for an act or conviction to be considered sufficiently connected to the battering or extreme cruelty, "the evidence must establish that the battering or extreme cruelty experienced by the self-petitioner *compelled or coerced* him/her to commit the act or crime for which he/she was convicted. In other words, the evidence should establish that the self-petitioner would not

15

interpretation is not binding on this Court or the BIA, and it is entitled to respect only to the extent it has the power to persuade.[47]  It is not persuasive.  Its interpretation is at odds with the plain meaning of "connected to" to the extent that it requires compulsion and coercion rather than a causal or logical relationship.  It is also internally inconsistent because compulsion/coercion and but-for causation are very different standards.

Thus, we hold that "connected to" is unambiguous and means "having a causal or logical relationship."  Applying the plain meaning of "connected to" to this case, Da Silva has established that her convictions are connected to the extreme cruelty she suffered.  The IJ and the BIA held that Leach's adultery was part of the extreme cruelty, and Da Silva assaulted L.N. while confronting Leach and L.N. about the affair.  This meets the causal or logical relationship standard.

**IV**

---

have committed the act or crime *in the absence of* the battering or extreme cruelty."  USCIS Interoffice Memorandum, *Determinations of Good Moral Character in VAWA-Based Self-Petitions*, Yates to Novak, Jan. 19, 2005, https://www.uscis.gov/sites/default/files/USCIS/Laws/Memor anda/Static_Files_Memoranda/Archives%201998-2008/2005/gmc_011905.pdf (emphasis added).

[47] *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("[I]nterpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have the 'power to persuade.'").

For these reasons, we will deny the government's motion to remand to the BIA to reconsider the term "connected to," grant the petition for review, vacate the BIA's order of removal, and remand for further proceedings consistent with this opinion.